Edward L. POWERS and Anna B. Powers, Plaintiffs,

v.

Anthony J. CELEBREZZE, Secretary of the Department of Health, Education and Welfare, Defendant.

Civ. No. 3986.

United States District Court
D. North Dakota,
Southeastern Division.

June 12, 1964.

John S. Whittlesey, Whittlesey, Pancratz & Wold, Fargo, N. D., for plaintiffs.

Gary Annear and Richard V. Boulger, Asst. U. S. Attys., Fargo, N. D., for the defendant.

RONALD N. DAVIES, District Judge.

This action was commenced pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare, denying Plaintiff's Application to establish a period of disability and for disability insurance benefits for her husband, Edward L. Powers.

Edward L. Powers and his wife, Anna, have lived on a farm near Leonard, North Dakota, since 1930, the year of their marriage. The original farm, a quarter section, was added to until it comprised a full section in 1952, all four quarters being in the names of Edward L. and Anna B. Powers as joint tenants. The Powers also raised chickens, cattle, swine and sheep.

In 1946 Mrs. Powers' brother and his four children moved into the Powers' farm home and lived with them. Because the four children ranged in age from 2½ to 12 years, Mrs. Powers necessarily devoted most of her time to household duties and less to operation of farm machinery than she had previously. Her brother assisted in the farming operations but also took various odd jobs in the community. He was paid unspecified sums for his farm labor and was given both room and board for himself and his children. The children also helped on the farm as they grew older and became able to do so.

In 1932 Edward became aware that he was suffering from paresis, a progressive general paralysis, involving or leading to "dementia paralytica." It is popularly, but not very correctly called "softening of the brain." Black's Law Dictionary, Fourth Edition. By 1954 a noticeable change was evident in his judgment, and while he was still consulted by his wife in making decisions, his opinions were not decisive.

In 1957 Mrs. Powers was informed by her doctor that she would have to undergo major surgery and that the possibility of complications existed. Concerned about Mr. Powers' progressive deterioration and about her contemplated operation, Mrs. Powers consulted an attorney. Upon advice of counsel a deed was executed, transferring title to the farm lands from joint tenancy to Anna B. Powers individually. On the same date, December 30, 1957, a bill of sale was executed by Edward L. Powers, transferring all of the livestock, poultry and farm machinery to Anna individually. These transactions permitted Mrs. Powers to execute a will containing testamentary trust provisions under which all of this property was to be held in trust for the benefit of Mr. Powers during his life and then to stated beneficiaries. The obvious purpose of these transactions was, in the event of Mrs. Powers' death, to insure that all of the property, both real and personal, would be managed by a trustee who would properly administer the estate for Edward's benefit, there being no question that his condition had deteriorated and was growing progressively worse.

No other changes were made in the farming operations. Although Mr. Powers had ceased participating in managerial decisions and no longer operated farm machinery by the time the transfers took place, December 30th, 1957, he still continued to take care of the chickens and do other farm chores, carried the necessary farm insurance in his own name, ordered poultry feed when needed and sold eggs and dairy products. The bank checking account was placed in Mrs. Powers' name, but the bank honored several of Mr. Powers' checks. Creamery and elevator stock remained in Edward's name, and dividends on the elevator stock continued to be paid to him. Even as late as 1960 Edward participated with Anna in a joint undertaking by confessing a judgment debt due a trust created by Edward's father.

In effect the only changes that were made by Mr. and Mrs. Powers in their farm operation of 1957 different from that which existed prior to 1957 were the land transfer from joint tenancy to Mrs. Powers individually and Mr. Powers' execution of the bill of sale transferring his interests in all of the livestock, poultry and farm machinery to Anna.

Happily, the surgery Mrs. Powers underwent was successful, and her fear of complications and possible death proved unfounded. After her recovery from surgery and in preparing to file an income tax return for the year 1958, she was in touch with the District Office of the Social Security Administration (presumably in Fargo, North Dakota) and was advised that as the property had all been transferred to her individually, all self-employment income should be reported to be credited to her Social Security account. Mrs. Powers followed this advice and joint returns were filed by Mr. and Mrs. Powers for the years, 1958, 1959 and 1960, crediting self-employment income for those years to Mrs. Powers' account. In 1955, 1956 and 1957 Mr. Powers had been credited on the joint returns with the self-employment income.

In April of 1960 amended returns were filed, increasing each year's self-employment income and seeking to credit it to Mr. Powers' Social Security account. In May of 1960 Mrs. Powers filed a claim for disability insurance benefits in Mr. Powers' behalf. After investigation the Bureau of Old-Age and Survivors' Insurance disallowed the claim, holding that Mr. Powers was not a self-employed farmer in 1958 and 1959 and that his Social Security account could not be credited with self-employment income for those years for which the amended returns were filed, as the farm was owned and controlled solely by Mrs. Powers after 1957, the transfer having been made because Mr. Powers could not successfully operate it.

After the application had been rejected by the Bureau of Old-Age and Survivors' Insurance, a hearing was sought and had before a Hearing Examiner. After this proceeding the Examiner filed his opinion.

and denied the claim. The Office of Appeals Council of the Social Security Administration affirmed, the affirmation constituting a final determination by the Secretary of the Department of Health, Education and Welfare. It is this determination which Plaintiffs seek to have reviewed here. The scope of permissible judicial review under § 405(g) is so well settled that no useful purpose would be served by restating it here.

Edward L. Powers is credited with self-employment for the years, 1955, 1956 and 1957 for a total of 12 quarters of Social Security coverage. Since the Act requires not less than 20 quarters, the question is whether he was a self-employed farmer in 1958 and 1959 and thereby acquired the needed eight additional quarters of coverage. In attempting to establish the claim, it was contended that Mr. Powers was either a self-employed farm operator during the years in question or that a partnership existed between himself and his wife during the pertinent years. In either event, Mr. Powers must have had at least $400.00 of self-employment income in each year.

The Hearing Examiner summarily disposed of the partnership contention by holding that:

"It is abundantly clear that Edward L. Powers and his wife, Anna B. Powers, the claimant, are not partners. None of the factors to support a finding of a common-law partnership are present. In the final analysis, whether an agreement between two or more persons constitutes a partnership depends upon the intent of the parties and their activities in carrying out their intent. The credible evidence herein fails to substantiate a partnership, and the Hearing Examiner so finds."

▆▆▆ There are few more difficult or uncertain questions to be decided than whether or not a given state of facts constitutes a partnership. The difficulty lies not in determining what are the applicable legal standards, but in applying them to a particular case. Under North Dakota law a partnership is defined as an association of two or more persons to carry on as co-owners a business for profit. Section 45–05–05, North Dakota Century Code. It is to be determined from the intention of the parties as expressed in the partnership agreement or *gathered from the acts and circumstances*. It is a relation arising out of contract, and a partnership *inter sese* arises only out of the contract of the parties as expressed in their agreement or *implied by their dealings with each other*. Degen v. Brooks, 77 N.D. 514, 43 N.W.2d 755.

In Celebrezze v. Wifstad, 314 F.2d 208 (8 Cir.), it was pointed out that OASI Bulletin 135, Sections 1007–1012, provides some guides as to the existence of a partnership. To be considered are:

A. Conduct of the business as a joint undertaking, not as a sole ownership;

B. Contribution of capital or service to the business by each party;

C. A sharing in management decisions and other responsibilities;

D. A sharing in the profits and risk of loss in accordance with the parties' agreement;

E. A holding out of the business to the public in such a manner as to indicate that the parties are partners.

The Bulletin further states that "It is not necessary that all of these factors be present in order for an arrangement to be considered a partnership or joint adventure."

In the instant case can it then be said that "none of the factors to support a finding of common law partnership are present"? This Court thinks not. A review of the entire record convinces me that the Secretary failed to apply the proper legal standards to the facts as he found them.

▆▆▆ The Claimant here also sought to establish that Mr. Powers was a self-employed farmer in 1958 and 1959 by showing income to him from the sale of

cream and eggs during those years. This contention was rejected on the basis that he could no longer be credited with self-employment income derived from cattle, lambs or poultry after December 30, 1957, since he had divested himself of all interest therein by executing the bill of sale to his wife. While it may be true that he divested himself of *legal* title to the real and personal property, he still retained an *equitable* estate.

"An equitable estate in its very conception, and as a fact, requires the simultaneous existence of two estates or ownerships in the same subject matter, whether that be real or personal, the one legal, vested in one person, and recognized only by courts of law; the second equitable, vested in another person and recognized only by courts of equity. * * * the ownership of the equitable estate is regarded by equity as the real ownership, and the legal estate is, as has been said, no more than the shadow always following the equitable estate, which is the substance, except where there is a purchaser for value and without notice who has acquired the legal title." Pomeroy's Equity Jurisprudence, 5th Ed., Vol. 1, Sec. 147.

The execution of the deed and the bill of sale by Mr. Powers did no more than transfer the bare legal title of the property to Mrs. Powers. Under the facts shown here it is neither just nor reasonable to hold that Mr. Powers had any less right to be credited with self-employment income for the years 1958 and 1959 than he had for the years, 1955, 1956 and 1957.

Even though this Court were to agree with the Secretary's determination that Mr. Powers had divested himself of the realty and personalty in 1957, and therefore could not be credited with self-employment income derived therefrom in 1958 and 1959, the Secretary then erred in deducting 1958 and 1959 depreciation expenses from income Mr. Powers received in 1958 attributable to grain and hay raised in 1957 and from payments received in 1958 and 1959 under the Na-

tional Wool Act as to wool produced in 1957.

If, as the Secretary determined, Mr. Powers had no interest in either the land or the personalty after 1957, assuredly he could not be charged with depreciation expenses incurred in the farm operation subsequent thereto.

The Court concludes that the Defendant Secretary's motion for summary judgment must be, and it is hereby denied, and that the Plaintiffs' motion for summary judgment must be, and it is hereby granted.