[File No. 7003]

GEORGE OLIVIER, Appellant, v. CARL ULEBERG,
Respondent.

(23 NW2d 39, 165 ALR 974)

454

Opinion filed May 18, 1946

*Francis Murphy,* for appellant.

*B. H. Bradford,* for respondent.

CHRISTIANSON, Ch. J. This is an action for a dissolution of a general partnership and an accounting between the partners. A dissolution was decreed and an accounting had. The appeal is limited to one item which the court held to be properly chargeable against the appellant Olivier in the distribution of the assets. The plaintiff Olivier appeals from the judgment and demands a trial anew of the question of fact embodied in the seventh Finding of Fact, which reads as follows: " 'That heretofore and from and after the 16th day of December, 1942, the said George Olivier abandoned the said business and took no part in the conduct thereof, or of any of the work in connection therewith in violation of his agreement hereinbefore set forth and without just or reasonable cause, and that the value of the services which he was capable of rendering during that period was the sum of Three Hundred Dollars ($300.) per month over a period of eighteen (18) months, or a total value of $5400.00; and that the said defendant, Carl Uleberg, was compelled to assume the full burden of the management, control and operation of the said business at all times subsequent to December 16, 1942, and up to the date that the stock, equipment and plant was purchased by the plaintiff, George Olivier, and that during the said period, to wit, the year 1943, the firm's net profits were $13,963.14; and that there were large and substantial profits made by the firm in the year 1944, and that portion of the year 1945 up to the day of sale; and that the said business was an essential one from the standpoint of the war effort.' "

Pursuant to this finding the court concluded as a matter of law: "That the plaintiff, George Olivier, be charged with the sum of $5400.00, being the value of his services for a period of eighteen months at $300.00 per month." This sum was then ordered to be taken into consideration in the accounting and in effect added $5400.00 to the assets of the firm which when divided, would increase the share of the respondent in the sum of $2700.00. In his brief the appellant says: "The sole question

presented for review on this appeal is whether in the circumstances disclosed by the record, one partner, to wit, the appellant, may be required to account to the partnership upon dissolution for an alleged failure to render services to it for a certain period of time." Our laws provide that a party who, on appeal from a judgment, "in any action tried by the court, without a jury, whether triable to a jury or not," desires a trial anew in the supreme court of questions of fact, shall specify in the statement of the case "the question of fact that he desires the supreme court to review, and all questions of fact not so specified shall be deemed on appeal to have been properly decided by the trial court." Section 28–2732, ND Rev Codes 1943. In this case the trial court found:

## I

"That heretofore and in the year 1913, the plaintiff, George Olivier, and the defendant Carl Uleberg, entered into a copartnership agreement for the purpose of carrying on the general business of a Sheet Metal Works, Roofing and Cornice Company, the sale and installation of heating plants and general metal repair work, and pursuant to such agreement the said co-partners have carried on such business up to the 10th day of March, 1945, at which time the Plaintiff, pursuant to the Order of this Court and a sale made thereunder, purchased the stock of merchandise of the co-partnership, the tools and equipment thereof, and since that date has conducted a business of like character as sole proprietor thereof; that the name of the firm aforesaid was 'Olivier & Uleberg.'

## II

That the partnership agreement above referred to was wholly verbal and thereby it was mutually agreed between the parties that they should enter into the said partnership on an equal basis, each party to receive one half ($\frac{1}{2}$) of the profits and each bear one half ($\frac{1}{2}$) of the losses; and it was further specifically agreed that the said parties should each devote his entire time and attention and best ability to the prosecution of the said

business and its welfare; and further mutually agreed that the said George Olivier should take care of the office work or have supervision thereof, figure and prepare the bids on work, and also do shop-work and 'other necessary and expedient work in connection with the said firm; and that the said Carl Uleberg should have general charge and supervision of the roofing and cornice work, and especially outside work and supervision over the labor employed.

### III

That the plaintiff and defendant, as such co-partners acquired valuable real estate, tools and equipment, stock of merchandise, stocks and bonds, and a large amount of cash on hand and other assets; that the parties agree that a dissolution of the said partnership shall take place and the partnership's assets divided between them, but can not agree upon the amounts properly chargeable as against each of the parties, nor upon a division of the partnership assets by reason thereof."

Under the provisions of the statute (§ 28-2732, Rev Codes 1943) the questions of fact covered by the three foregoing paragraphs of the Findings of Fact, are deemed to have been properly decided by the trial court and must be accepted on this appeal as true.

Concerning the questions of fact covered by the seventh finding—which questions the appellant has demanded be tried anew in this court—the testimony of the parties as embodied in the statement of case, is substantially as follows: The plaintiff Olivier testified that there had been some disagreement between the parties with respect to the distribution of the profits of the partnership; that Olivier had suggested that some of the accumulated profits be distributed between the partners but that Uleberg was of the mind that the profits should not be distributed but retained by the partnership. According to Olivier's testimony some ill will had developed which became more pronounced in the summer of 1942. Olivier testified that at one time during the summer of 1942, Uleberg invited him into the office saying he wanted to speak to him; that they were alone

and that he, Uleberg, seemed to go into an emotional outburst: "He threw up his hands and talked to me in a very loud tone of voice, exclaiming—'Take the business, take the business. You have throwed a monkey-wrench into everything that I have done. You don't want anybody else to make money. You have been the cause of all my grief, and it seems to me you have hated me all the time.' That was all a surprise to me. I asked him 'What do you mean,' He spoke about 'You hated me all the time.' I said, 'What do you mean?' Then he said, 'Most all the time.' At that step a customer came in that I had been servicing and it was necessary for me to give him my attention, and that was the beginning of the difficulties—that was the beginning."

"Q. Did he at any time later explain what he meant by saying 'you hated him?'

A. Never a word of any description.

Q. You think that was some time in the summer of 1942?

A. Yes."

Olivier testified that "not very long after" this incident he and Uleberg met two times at their place of business in the evening after their day's work to discuss their affairs,—"to thresh out the business and dissolve it, if that was the thing to do,"—but that "nothing ever came of those appointments." Olivier further testified that in January, 1943, he received from the defendant Uleberg the following letter:

"1/28/43

Geo.

Have been thinking over the problem of the shop and would like to come to some definite conclusions. What is your opinion as to putting in a manager in the shop.

Would you be interested in taking over the business. Would you be interested in taking over the real estate. As for myself I'm not very particular and would like to settle as to your wishes. J. B. Reed was in the other day and asked that we make him a proposition on the Dak. Hotel properties. Terms,

down payment and monthly payments over a period of six to seven years.

C. Uleberg."

Uleberg testified that Olivier absented himself from the business after December 16, 1942; that the last time he saw him at their place of business was on that day. In this he is corroborated by a clerk in the office, who testified she did not see Olivier there at any time after December 16, 1942, until at a subsequent date, considerably later, when he came there with his attorney. Uleberg testified that it was the custom of Mr. Olivier to put in a time slip each day showing the work that he had performed; that the last time slip on file was for December 16, 1942. The plaintiff, Olivier, testified that he performed some work for the firm after December 16, 1942; that in the latter part of December, 1942, he did some work on a construction job which the partnership had undertaken for the Westland Oil Company; that he became ill and could not finish the job at that time. Olivier does not claim to have been at the firm's office after December 16, 1942, or to have handled any of the office work, such as preparation of bids, plans, etc., but he stated that he did perform work on certain jobs for the partnership. He admits that he filed no time slips in the office of the firm, but he stated that he prepared such time slips and kept them at his home. He produced, and offered in evidence, twelve such time slips. Four of them refer to work listed as having been performed on February 1, 2, 3 and 4, and the remaining eight refer to work listed as having been performed on the Westland Oil Company contract on April 12, 13, 14, 15, 16, 17, 19 and 20. After Uleberg had testified with respect to the absence of Olivier from his work subsequent to December 16, 1942, Olivier was recalled and testified that he performed some work for the firm of Olivier & Uleberg after December 16, 1942, but he said "I left in April, or rather I discontinued on April 20, 1943." Thereafter, on cross-examination, Olivier testified as follows:

"Q. You also figured most of the jobs, didn't you, on contracts?

A. Yes.

Q. That practically was the department that you handled, wasn't it?

A. That department, yes.

Q. And you attended to the plans and specifications and the bids in connection with them, did you not?

A. Yes, usually.

Q. And you have done none of that since, at least since March 5, 1943?

A. No.

Q. In addition to that you did shop work?

A. Oh, yes.

Q. And sort of acted as foreman of the shop?

A. Yes."

This action was instituted in September, 1944—the summons and complaint being served on September 29, 1944. In a memorandum opinion filed in this case the trial court said:

"The partnership was formed in 1913 at Minot. At the time the oral contract of partnership was entered into and ever since then, and until December 16, 1942, each party contributed his time, skill and ability so far as the same was reasonably necessary to the conduct of the business. Neither partner received any salary, wages or compensation other than a share of the profits. Among other things the firm business included such work or business as roofing, cornice-work, heating and repairs, and motor vehicle radiator repairs. In general the work and duties were divided somewhat as follows: Olivier supervised and managed the office, attended to draftsmanship matters, prepared bids for contract work and did actual work in the shop and outside. Usually Uleberg had charge of the outside work on roofing contracts, cornice-work, installation and repair of heating plants, etc.

Between December 16, 1942 and about the 1st day of April 1943, Olivier was absent from the business for nearly "all of the time, but he did perform some minor duties during that time. It seems that serious differences of opinion had arisen between the parties concerning the policy of the firm. Olivier concedes that from and after the month of April, 1943, he was

continuously absent from the business and performed no services."

Plaintiff's counsel invokes the rule embodied in § 45–0112, ND Rev Codes 1943,. which reads: "A partner is not entitled to any compensation for services rendered by him to the partnership." "This section is a declaration of the common law on the subject." Wisner v. Field, 11 ND 257, 260, 91 NW 67. Under this rule "a partner is not entitled to receive compensation for services rendered in the prosecution of the partnership business merely by reason of any inequality of services rendered by him, as compared with those rendered by his copartners." 40 Am Jur 214, Partnership, § 123; 1 Rowley, Modern Law of Partnership, § 351, pp 404 ct seq. See also Shirley v. Straub, 50 ND 872, 198 NW 675. This rule, however, does not preclude the parties from making their own agreements so as to adjust the respective equities of the partners. But, in the absence of agreement (express or implied) for compensation, unequal services will be presumed to have been rendered without expectation of reward. 40 Am Jur 215, Partnership.

"The relationship of partners is fiduciary and imposes upon them an obligation of the utmost good faith and integrity in their dealings with one another with respect to partnership affairs." 40 Am Jur 217, Partnership. See also Lay v. Emery, 8 ND 515, 79 NW 1053. And where "partners agree among themselves what duties each will perform in the common business, and one wilfully fails to perform his agreed part, an allowance should be made to the one who performs that part. Also, it has been held that a partner who neglects and refuses, without reasonable cause, to perform the services which he has stipulated to render the partnership is liable to account to the firm for the value of the services in the settlement of partnership accounts, and that such an allowance is not precluded by the rule denying a partner compensation for individual or unequal services." 40 Am Jur 216, Partnership. In Rowley's Work on the law of partnership, it is said: "If one partner refuses without good cause to perform the services to which he has agreed, the other will usually be given an allowance there-

for, or a deduction will be made from the share of the partner who did not perform his agreed service." 1 Rowley, Modern Law of Partnership, p 415, § 356. See also Stegman v. Berryhill, 72 Mo 307; Miller v. Hale, 96 Mo App 427, 70 SW 258; Marsh's Appeal, 69 Pa 30, 8 Am Rep 206; Valentin v. Sarrett, 25 Idaho 517, 138 P 834; Lay v. Emery, 8 ND 515, 79 NW 1053. In Lay v. Emery (ND) supra, this court held: "In an action for an accounting between partners, where it appears that one of the partners contracted to devote his entire time to the management of the partnership business, and that he has retained from the firm funds compensation for his entire time, when in fact he devoted only a portion of it, a court of equity, upon a final adjustment of the partnership accounts, may make deduction for the value of the portion of time not so employed." (Syllabus, ¶ 5.)

On this appeal it stands undisputed that the partnership agreement provided that each of the partners should devote his full time to the partnership business; also that the agreement provided for a division of duties, which was recognized and adhered to for more than twenty-eight years. The evidence clearly shows that the plaintiff Olivier was absent from the place of business of the partnership since December 16, 1942, and subsequent to that date failed to perform the work which, under the partnership agreement he had agreed to perform. That subsequent to December 16, 1942, he performed labor only for a few days, and that after April 20, 1943, he performed no work of any kind for the partnership.

The defendant Uleberg testified that the value of the services of Olivier, which he thus failed to perform and of which the partnership was deprived, was $350 per month. This testimony stands uncontradicted. The court placed a value of $300 per month on such services.

While the record shows there was some disagreement between the partners, we are unable to see where the evidence shows any reasonable ground for the plaintiff abandoning his position and failing to perform the work which the partnership agreement obligated him to perform. Whatever difficulties existed, there

is nothing to show that Uleberg in any manner interfered with Olivier performing his work. The mere fact that strained relations had grown up between the partners did not relieve either of them from his duties and obligations under the partnership agreement. 40 Am Jur 219, Partnership, § 130.

The trial court held that under the terms of the partnership agreement it was incumbent upon each partner to devote his whole time to the partnership business; that for a period of 18 months the plaintiff, Olivier, had failed to perform any service for the partnership; that the services which he thus failed to perform were of the value of $300.00 per month; that, as a consequence of the breach of the partnership agreement, the partnership had a valid claim against Olivier for $5400.00, and that "in the accounting, Olivier should be debited in the amount of $5400 and credited for one-half thereof, or $2700, and Uleberg should be credited for the other half or $2700—since each partner is entitled to one-half of the profits of the firm—the $5400 would become an asset of the firm and divided as part of the profits the same as any other asset of the partnership firm." In its memorandum opinion the trial court said:

" 'By the well-settled law of partnership, both at common law and under our statute, partners are not entitled to compensation for their services, however unequal in value or amount. However, the Court herein is not allowing partner Uleberg any COMPENSATION for services rendered to the partnership during the time that Olivier was absent therefrom. The Court is simply charging Olivier, as a partner, for a total breach of his contractual obligation : . . .'

The loss which was caused by such breach has not been established in terms of actual injury to the partnership, and therefore, the Court adopts the measure of damages set forth in the analogous case of Marsh's Appeal, 69 Pa 30, 8 Am Rep 206, supra, wherein it was held (at page 212, of 8 Am Rep) 'The proper measure of damages under the circumstances of the case, is the value of the services wrongfully withheld.' As stated herein above, the value of Olivier's services was $300 per

month. He wrongfully withheld such services from the firm for 18 months and therefore he must be charged $5400 in damages to the partnership firm. This $5400 is a firm asset and it is only by way of the accounting that partner Uleberg will benefit therefrom.

Marsh's Appeal (Pa) supra, 8 Am Rep 206, reads as follows: (commencing at page 209) 'The plaintiffs are not seeking compensation for the services they rendered the partnership. They are simply seeking to charge the defendant with the loss occasioned the partnership by his refusal to render the services which he agreed to perform. If the partnership has suffered by his breach of the agreement, why should he not make good the loss, and put the firm in the same condition it would have been if he had not broken the agreement? If the defendant is compelled to make good the loss, each member of the firm, INCLUDING HIMSELF, will receive his proportion of the amount in the distribution of the partnership assets, and in no just sense can this be regarded as compensation for the services individually rendered.' "

The findings of fact and conclusions of law subsequently made and filed and the judgment rendered are in conformity with the views thus expressed by the trial court.

We are agreed that the seventh finding of fact is supported by a preponderance of the evidence; and that the judgment appealed from is correct.

Judgment affirmed.

MORRIS, BURKE, NUESSLE, and BURR, JJ., concur.