45 N.W.2d 488 (1950)
ANDERSON
v.
BOTHUM.
No. 7158.
Supreme Court of North Dakota.
December 19, 1950.
*489 Daniel S. Letnes, Grand Forks, and Nilles, Oehlert & Nilles, Fargo, for plaintiff and respondent.
Day, Lundberg, Stokes, Vaaler & Gillig, and Philip R. Bangs, Grank Forks, for defendant and appellant.
NUESSLE, Chief Justice.
This action was brought to terminate and dissolve a partnership known as the Anderson-Bothum Implement Company and for an accounting.
The plaintiff in his complaint alleged the formation of a partnership; its engagement in business; differences between the partners; an audit of the books of the partnership; a notice of termination by the plaintiff to the defendant; a tender of the alleged value of the defendant's interest therein; and prayed judgment accordingly. The defendant answering, admitted the formation of the partnership; that a business was begun and carried on by it; denied the alleged termination of the partnership by the plaintiff; and counter-claiming, alleged that the business was a profitable one; that the plaintiff was wrongfully endeavoring to oust the defendant from the firm and deprive him of his interest therein; and in turn prayed a dissolution of the partnership and an accounting by the plaintiff, and for judgment accordingly.
Briefly, the facts may be outlined as follows: plaintiff and defendant resided in Minnesota at or near the village of Kennedy. Plaintiff was a successful, elderly farmer who had some money to invest. Defendant was a young man who owned a farm and who was also engaged in Kennedy in operating a grocery store, a fertilizer establishment, a locker plant, and a cafe. The parties had known each other for some years. In 1945, plaintiff approached the defendant and proposed that they engage in the implement business at Kennedy. Defendant was receptive. Thereupon the parties sought to make sales connections with some concern manufacturing combines and other farm machinery. They were unable to make satisfactory arrangements for such a business at Kennedy but learned that there was an opportunity to enter into a contract with the Massey-Harris Company who owned a building in Grand Forks and had no agency there. This company manufactured combines and other farm implements. They contacted the company and finally obtained a contract to handle its machinery at Grand Forks. This contract was entered into in January, 1946, and terminated on November 30, 1946.
There was no written agreement of partnership executed by the parties. There was, however, a loose understanding that the plaintiff would move to Grand Forks and carry on the business, and that the defendant would assist with his advice and would, when called for, go to Grand Forks, some 70 miles from Kennedy, if and when he was needed there. Anderson was to be paid for his services. The profits were to be divided equally. Anderson was to finance the undertaking and was to be paid interest at the rate of 7 per cent on such portion of the business capital as might be advanced by him to make up the defendant's contribution of one-half thereof. $7,000 was required. Anderson paid this in. Bothum made no payments until September 7, 1946, when he paid $1,000.
*490 Lester Gronseth was Anderson's son-in-law. He and his wife were living in Minneapolis. He was stationed there in the armed services of the United States. His salary was $250 per month. His wife was engaged in secretarial work and received a salary of $160 per month. Anderson and Bothum went to see Gronseth. They offered him a position as bookkeeper and salesman. He accepted their proposition and agreed to begin work as soon as he was released from the service. He was released in March, 1946, and moved to Grand Forks. The business prospered. Anderson spent the greater part of his time looking after it. He frequently consulted with Bothum by telephone and otherwise. And Bothum came to Grand Forks occasionally, and while he knew generally about what was being done, paid little attention to the business. He had access to the books and knew the salaries that were being paid to Gronseth and to Anderson. However, there were differences between the partners and at times more or less violent altercations. After the last of these altercations, Anderson told Bothum that they could no longer continue the partnership arrangement. Thereafter and on or about October 28, 1946, he sent Bothum a letter wherein he stated: "The partnership can no longer exist, so therefore, you better come down immediately upon receipt of this letter." Bothum received the letter and went to Grand Forks. There was some conversation between the partners and among other things Anderson told Bothum that the latter was through. From that time on he took no part in the business affairs of the company.
The Massey-Harris contract expired on November 30. This contract was the core around which the business of the company was built. The Massey-Harris people knew of the disagreement between Anderson and Bothum. Their manager had a meeting with them in December. The matter of the renewal of the contract was discussed. Anderson stated that it could not be renewed with Bothum and himself. Thereafter it was renewed with Anderson and Gronseth. At the same time Bothum was given the Massey-Harris contract for an agency at Kennedy, in which concededly Anderson had no interest.
After sending the letter above described to Bothum in October, Anderson procured the services of accountants to audit the affairs of the company and make a checkoff as of date November 30, 1946. From that date on, the business was carried on by Anderson and Gronseth. In March, 1947, a letter was sent to Bothum reciting what had been done and that the auditing company had found that the value of the assets of the Anderson-Bothum partnership as of date November 30, 1946, had been determined and that Bothum's half share of such assets was the sum of $5,194.59 a check for that amount payable to Bothum was enclosed. Bothum promptly returned this check. From that time on, however, he did nothing evidencing in any way his claim that the partnership was not terminated or that he was interested therein, and performed no service of any kind with respect to carrying on the business.
The record is voluminous. There are direct contradictions in the testimony. The trial court made his findings in the matter, stated his conclusions of law on the facts as thus found, held that there had been a dissolution of the partnership as of November 30, 1946, and ordered an interlocutory judgment dissolving the partnership as of date, November 30, 1946, and directing the appointment of a referee to take testimony as to the value of the partnership property as of that date to enable a final judgment to be entered in accordance therewith. An interlocutory judgment was entered in accordance with the order thus made. Thereafter the defendant moved for a new trial on the ground that the evidence was not sufficient to sustain the findings and judgment thus made and entered, and on the further ground that the court had erred in receiving certain testimony over the objection that the same was hearsay and thus inadmissible. The motion for new trial was denied, whereupon the defendant perfected the instant appeal from the order denying his motion and from the judgment.
*491 On the threshold of our consideration of this appeal we are confronted with the questions as to whether it is properly here and whether we have jurisdiction to determine it.
We have heretofore referred to the judgment from which the appeal was taken. The statute, Section 28-0901, R.C. 1943, defines a judgment as "the final determination of the rights of the parties in an action." Nowhere in the statutes is there any general provision for interlocutory judgments, though in certain cases the courts are empowered to exercise a continuing jurisdiction after judgment entered. See Sections 32-1914, 32-1915, Foreclosure and 14-0522, 14-0524, Divorce R.C. 1943. The judgment is interlocutory in character and so designates itself. It further recites that "Upon the filing of the report of the referee, this court will on notice to the parties hear and consider the same and render its Final Judgment herein; that plaintiff recover his costs and disbursements to be taxed and included in the Final Judgment rendered herein." Clearly it does not finally determine the rights of the parties to it and cannot be said in any sense to be a final judgment. See Middleton v. Finney, 214 Cal. 523, 6 P.2d 938, 78 A.L.R. 1104; Wells v. Shriver, 81 Okl. 108, 197 P. 460; 31 Am.Jur., Judgments, Sec. 431 et seq., page 94; 49 C.J.S., Judgments, § 65 et seq., page 184.
The right of appeal is purely statutory. Torgerson v. Minneapolis, St. P. & S. S. M. Railway Co., 51 N.D. 745, 200 N.W. 1013; State v. McEnroe, 69 N.D. 445, 287 N.W. 817, and cases cited; Langer v. Gray, 74 N.D. 709, 24 N.W.2d 339. Section 28-2701, R.C. 1943 provides: "A judgment or order in a civil action or in a special proceeding in any of the district courts may be removed to the supreme court by appeal as provided in this chapter." Chapter 28-27. While this statute says that a judgment may be removed and does not use the word "final", certainly, considering the definition of a judgment in Section 28-0901, supra, it must be construed as meaning that only a final judgment may be removed. Our conclusion therefore is that since the judgment from which the appeal in the instant case was taken is not final, no appeal lies therefrom, and consequently, this court has no jurisdiction to hear such an appeal. See Stimson v. Stimson, 30 N.D. 78, 152 N. W. 132; Ostlund v. Ecklund, 42 N.D. 83, 171 N.W. 857; Reuland v. Independent District of White Lake, 64 S.D. 621, 269 N. W. 484; Middleton v. Finney, supra. 2 Am. Jur. Appeal and Error, Sec. 21 et seq., page 858; 4 C.J.S., Appeal and Error, § 95 et seq., page 191.
But the appeal here is not only from the judgment. The defendant moved for a new trial. This motion was denied and the appeal was also taken from the order denying the motion. The statute, Section 28-1901, R.C. 1943, defines a new trial as "reexamination of an issue of fact in the same court, after a trial and decision by a jury or court or by a referee." Here the words "after a trial and decision by a court" must mean a decision after the case is concluded. Every ruling by a judge during the course of a trial in a sense evidences a decision. And certainly the legislature did not intend that after every ruling by a judge in the course of a trial, the party affected adversely by the ruling might move for a new trial. The decision in the instant case was not final, but was interlocutory. No final judgment was to be entered until after the referee had filed his report and the court had heard and considered the same after notice to the parties. Therefore, the motion was premature, there having been no final decision. It follows that there was no error in denying the motion and no right of appeal from the order doing so. See Zimmerman v. Kitzan, N.D., 43 N.W.2d 822; Middleton v. Finney, supra; Hayne, New Trial and Appeal, Sec. 184, page 561.
Consistent with what we have said above, the appeal must be dismissed and the case remanded to the district court for further proceedings. It is so ordered.
BURKE, MORRIS, GRIMSON, and CHRISTIANSON, JJ., concur.