Terri DURWARD, f/k/a Terri Nelson,
Plaintiff and Appellee,

v.

Carmie NELSON and Helen D. Nelson,
husband and wife; Defendants
and Appellants,

Edward H. Christianson and Geneva J.
Christianson, husband and wife; the
Agricultural Stabilization and Conser-
vation Service of Burke County, ND;
Shell Western E & P Inc.; William Her-
bert Hunt Trust Estate; Monsanto Oil
Company; Kinson Resources, Inc.;
Jack A. Witkin; General Atlantic Ener-
gy Corporation; and Monsanto Compa-
ny, Defendants.

Civ. No. 910170.

Supreme Court of North Dakota.

Feb. 20, 1992.

Dean F. Bard (argued), of Bard & Bard, Bismarck, for plaintiff and appellee. Appearance by Terri Durward, appellee.

Ella Van Berkom (argued), of Ella Van Berkom Law Firm, Minot, for defendants and appellants.

MESCHKE, Justice.

Carmie and Helen D. Nelson [Nelsons] appeal from a judgment partitioning two quarter sections of land that the court found to be jointly owned by the Nelsons and Terri Durward. We affirm the partition of the land and remand for reconsideration of rents and profits awarded to Terri.

Terri married the Nelsons' son, Lowell, on October 16, 1976. On March 8, 1977, Edward and Geneva Christianson executed a contract for deed to convey the NW¼ of Section 24, Township 160 North, Range 90 West, in Burke County by warranty deed to Lowell and Terri for $40,000. The contract for deed specified a $1,000 downpayment, that Carmie paid, with the balance "based on an annual payment of 40% of the gross crops grown on the conveyed property with interest of Seven per cent 7% on the remaining balance." According to Geneva, Carmie made all the payments under that contract for deed. The final payment was made on February 20, 1985.

On May 3, 1979, the Christiansons executed another contract for deed to convey the SE¼ of Section 23, Township 160 North, Range 90 West, in Burke County by warranty deed to Lowell and Terri for $40,-000. That contract for deed specified a $4,400 downpayment, that Carmie paid, with the balance in "an amount equivalent to 40.0% of the crop annually plus interest at the rate of 7% per annum." According to Geneva, Carmie also made all the payments under that contract for deed. The final payment was made on April 7, 1988.

Lowell and Terri were divorced on January 20, 1987. The divorce decree awarded Terri one-half of the couple's interests in the SE¼ of 23 and the NW¼ of Section 24. Terri and Lowell executed quit claim deeds conveying an undivided one-half interest in the two quarter sections to each other, and Lowell then executed a quit claim deed conveying his undivided one-half interest in the two tracts to the Nelsons.

Terri commenced this action to partition the two tracts of land. She also sought an accounting for one-half the rents and profits from the land and for her share of ASCS payments. The Nelsons admitted that Lowell and Terri were vendees under the two contracts for deed from the Christiansons; however, the Nelsons alleged that because they paid for the land, Terri did not have any ownership interest in it.

They sought to quiet title to the land in their name.

The trial court reasoned that the case presented a collision between the presumption of a resulting trust when one person pays for property that is transferred to another, and the presumption of a gift when a parent pays for property that is transferred to a child. The trial court found that the presumption of a gift had not been rebutted by clear and convincing evidence, and concluded that the Nelsons and Terri each owned an undivided one-half interest in the two tracts of land. The court partitioned the two tracts, awarding Terri the SE¼ of Section 23 and awarding the Nelsons the NW¼ of Section 24. The court also awarded Terri $15 per acre for rent of the SE¼ of Section 23 for 1987, 1988, 1989, and 1990, and for her share of ASCS payments for those years, too. The Nelsons appealed.

■■■ The Nelsons argue that the trial court erred in determining that Terri had any ownership interest in the two tracts of land. They contend that the trial court erred in relying upon the presumption of a gift because there was no evidence that the Nelsons intended to give the land to Lowell and Terri. The Nelsons admit that the contracts for deed named Lowell and Terri as vendees; however, they assert that because Carmie paid for the property, the statutory presumption of an implied trust applies to the transfers from the Christiansons.

The relevant statute says:

*Implied trust—How created.* An implied trust arises in the following cases:

\* \* \* \* \* \*

4. When a transfer of real property is made to one person and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made.

NDCC 59–01–06(4). However, our caselaw also recognizes the general rule that there is a rebuttable presumption of a gift when a parent pays for property that is transferred to a child. *Zundel v. Zundel*, 278 N.W.2d 123 (N.D.1979); *Schrank v. Meade*, 145 N.W.2d 514 (N.D.1966); *Shong v. Farmers' & Merchants' State Bank*, 70 N.W.2d 907 (N.D.1955); *Currie v. Look*, 14 N.D. 482, 106 N.W. 131 (1905). *See* Restatement of Trusts 2d, § 442 (1959) ["Where ... the transferee is a wife, child or other natural object of bounty of the person by whom the purchase price is paid, a resulting trust does not arise unless the [payor] manifests an intention that the transferee should not have the beneficial interest in the property."]. *See also,* Note, *Trusts—Implied Trusts in North Dakota,* 29 N.D.L.Rev. 58 (1953). The rebuttable presumption of a gift is based upon the close relationship that exists between a parent, as payor, and a child, as transferee. Bogert, Trusts and Trustees, §§ 459, 460 (2d Ed.1991); 76 Am.Jur.2d *Trusts* § 206 et. seq. (1975). When that relationship exists, the resulting presumption of a gift is rebutted by proof that the payor did not intend a gift, in which case an implied trust results. *Zundel; Shong; Currie. See* Restatement of Trusts 2d, § 443 (1959) ["Where ... the transferee is a wife, child or other natural object of bounty of the person by whom the purchase price is paid, and the [payor] manifests an intention that the transferee should not have the beneficial interest in the property, a resulting trust arises."].

■■ Because an implied trust contradicts the record title to real property, there must be clear and convincing evidence to establish that the consideration was paid by or for someone other than the holder of record title. *Zundel. See* Bogert, Trusts and Trustees, § 464. When, as here, there is a close relationship between the payor and title holder, the presumption is one of gift, rather than one of a resulting trust. That presumption of gift must be rebutted by clear and convincing evidence that the Nelsons intended a resulting trust instead of a gift.

■■ The trial court found that Carmie's initial intent was "to have the deed given to Lowell and Terri as tenants in common" and that "[t]he presumption of a gift has not been rebutted by clear and convincing

evidence." Our review of a trial court's findings of fact about the application of the presumptions of a gift and a resulting trust is governed by the "clearly erroneous" standard of NDRCivP 52(a). *Zundel.* A finding of fact is clearly erroneous when, although there is some evidence to support it, the reviewing court, on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Zundel.* We give due regard to the trial court's opportunity to assess the credibility of the witnesses. NDRCivP 52(a). Simply because we may have viewed the evidence differently if we had been the initial trier of fact does not entitle us to reverse the trial court. *Zajac v. Great American Ins. Companies,* 410 N.W.2d 155 (N.D.1987). Here, we are not left with a definite and firm conviction that the trial court made a mistake.

■ Carmie testified that he did not intend to give the two tracts of land to Lowell and Terri. According to Carmie, the contracts for deed for the two tracts of land identified Lowell and Terri as the vendees:

A  Because I wanted, I asked him if he could afford to buy it and he said he could not.

Q  You are speaking now of Lowell?

A  Yes.

Q  Okay.

A  And I knew he wanted it really, but he could not afford it, and I knew if we didn't buy it someone else would. And I said I would buy it and any time he wanted to buy it from me he could.

However, the facts and circumstances surrounding the transaction are important to rebut or corroborate the finding of an intent to make a gift. *Zundel; Shong.* The health, age, financial condition, and business experience of the parents are important considerations. *Zundel; Shong.* Thus, it is "exceedingly natural" for wealthy parents to make a gift to their children and the opposite is true if the parents are not wealthy. *Shong,* 70 N.W.2d at 912. Here, there was evidence that Carmie owned and actively farmed other quarters of land in the area. There was no evidence that Carmie was financially hard pressed, or that he had any reason to conceal that he was purchasing the property. *Zundel; Shong;* Comment a, Restatement of Trusts 2d, § 443. Those circumstances support an "exceedingly natural" inference that Carmie intended a gift.

■ Management and control of the property are also important circumstances in determining whether the payor intended to make a gift to the transferee. *Zundel.* The presumption of a gift may be rebutted by evidence that, after the transfer, the payor managed and controlled the property, collected the rent, and paid the taxes. *Zundel;* Comment a, Restatement of Trusts 2d, § 443. Here, there is conflicting evidence about who managed and controlled the property.

Carmie and Lowell both testified that Carmie controlled the property and that Lowell did not farm the two tracts of land; however, they later admitted that they farmed each other's land and used each other's equipment interchangeably. Carmie characterized the farming enterprise as a "family type operation." Although Carmie may have personally delivered the payments for the contracts for deed to the Christiansons, the contracts for deed indicate that the annual payments were based upon 40% of the crops from the land, and the evidence supports an inference that the payments based on those crops were derived from a joint farming enterprise between Carmie and Lowell.

There was evidence that Lowell was listed as the "operator" of the NW¼ of Section 24 for purposes of ASCS payments. According to the County Executive Director of the Burke County ASCS office, an operator is "in total control of the farming operation, making all management decisions, financing, physical labor, equipment, in that order." Lowell also received about $3,500 in surface damages because of oil exploration on the NW¼ of Section 24. Additionally, Terri testified that she and Lowell paid the taxes on both tracts of property through 1986 and that she and Carmie split the taxes for 1987.

Giving due regard to the trial court's opportunity to assess the credibility of the witnesses, we are not left with a definite and firm conviction that the trial court made a mistake in finding that the presumption of gift was not rebutted. We therefore conclude that the trial court's findings are not clearly erroneous.

■ Pursuant to the divorce decree and the quit claim deeds between Terri and Lowell, Terri obtained one-half of the couple's interest in the two tracts of land. The Nelsons obtained their interest in the two tracts when Lowell later quit claimed his remaining interest to them. Based on that chain of title, the trial court did not err in determining that Terri and the Nelsons owned the two tracts as tenants in common and in partitioning the land.

■ The Nelsons also contend that the trial court erred in granting Terri rents and profits from the SE¼ of Section 23. Terri sought an accounting for one-half the rents and profits from the land and presented evidence that cash rentals in the area were between $17 and $30 per acre. The court awarded Terri "$9,600.00 for cash rent due ... at $15 per acre for 160 acres for the crop years 1987, 1988, 1989 and 1990." The contract for deed indicates that Carmie paid $6,009.72 in principal and interest on the SE¼ of Section 23 after the divorce decree was entered on January 20, 1987. These circumstances suggest that a downward adjustment in favor of the Nelsons may be appropriate, at least for one-half of the amount of the contract payments made after the divorce when Terri and the Nelsons owned the tracts as tenants in common. However, the trial court did not adjust its award of rents and profits to account for the contract payments made after the divorce decree, nor did the trial court explain why an adjustment was not necessary. Accordingly, we remand for reconsideration of the award for rents and profits.

We note, too, that the judgment erroneously describes the property awarded to Terri as the SW¼ of Section 23 rather than the SE¼ of Section 23. Pursuant to

NDRCivP 60(a), that clerical mistake can be corrected on remand.

We affirm the judgment quieting title and partitioning the property, and we remand for reconsideration of the award for rents and profits.

ERICKSTAD, C.J., and LEVINE and VANDE WALLE, JJ., and VERNON R. PEDERSON, Surrogate Judge.

VERNON R. PEDERSON, Surrogate Judge, sitting due to the resignation of the Honorable H.F. GIERKE III.