FIRST NATIONAL BANK OF BEL-
FIELD, located in Belfield, North Da-
kota, Plaintiff and Appellee,

v.

Douglas CANDEE, Defendant
and Appellee,

and

David Schmidt and Kathleen Schmidt,
Defendants and Appellants.

FIRST NATIONAL BANK OF BEL-
FIELD, located in Belfield, North Da-
kota, Plaintiff and Appellee,

v.

David SCHMIDT and Kathleen Schmidt,
Defendants and Appellants.

FIRST NATIONAL BANK OF BEL-
FIELD, located in Belfield, North Da-
kota, Plaintiff and Appellee,

v.

Frank SCHMIDT and David Schmidt,
Defendants and Appellants,

and

Douglas Candee, d/b/a Schmidt,
Schmidt and Candee, Defendant
and Appellee.

FIRST NATIONAL BANK OF BEL-
FIELD, located in Belfield, North Da-
kota, Plaintiff and Appellee,

v.

Frank SCHMIDT and David Schmidt,
Defendants and Appellants,

and

Douglas Candee, d/b/a Schmidt,
Schmidt and Candee, Defendant
and Appellee.

Douglas G. CANDEE, Plaintiff
and Appellee,

v.

David SCHMIDT and Frank A. Schmidt,
Defendants and Appellants.

Douglas G. CANDEE, Plaintiff
and Appellee,

v.

David SCHMIDT, Defendant
and Appellant.

Civ. No. 910154 to Civ. No. 910159

Supreme Court of North Dakota.

June 25, 1992.

William G. Heth (argued), of William Heth Law Firm, Dickinson, for plaintiff and appellee First Nat. Bank of Belfield.

Appearance by George Wald of First Nat. Bank of Belfield.

William A. Herauf (argued), of Freed, Dynes, Reichert, Buresh & Herauf, PC, Dickinson, for plaintiff, defendant and appellee Douglas Candee. Appearance by Larry Gardner of Candee Const.

Thomas M. Disselhorst (argued), of Disselhorst Law Office, Bismarck, for defendants and appellants David Schmidt, Kathleen Schmidt, and Frank Schmidt. Appearance by David Schmidt and Kathleen Schmidt.

MESCHKE, Justice.

Frank and David Schmidt appeal from a "Final Order Of Distribution Of Partnership Assets" entered in six separate actions and from a denial of their motion to vacate an order requiring the sale of partnership property in South Dakota. We affirm.

In 1974 Douglas Candee orally agreed with Frank and David to form Schmidt, Schmidt, and Candee (SS & C), a farming partnership. SS & C purchased land in Perkins County, South Dakota, and farmed it from 1975 through 1983. Then, Frank experienced health problems, and in 1984, Douglas and David orally agreed to form a second farming partnership, Rabbit Creek, to rent equipment and the South Dakota land from SS & C. From 1984 through 1987, Rabbit Creek farmed that land.

Meanwhile, various partners and David's wife, Kathleen, executed four promissory notes payable to First National Bank of Belfield. Douglas executed one promissory note that he, David, and Kathleen personally guaranteed. A second promissory note was executed by David and Kathleen, and the other two promissory notes were executed by all three partners.

When timely payments were not made, the Bank sued the respective partners and Kathleen in four separate actions to collect on the four notes. Thereafter, Douglas sued David and Frank, seeking dissolution of SS & C and an accounting and distribution of its assets. Douglas also separately sued David, seeking dissolution of Rabbit Creek and an accounting and distribution of its assets.

The trial court consolidated all six actions for a trial without a jury. The court found in favor of the Bank in the four actions to collect on the promissory notes. In the dissolution actions on August 22, 1989, the court ordered dissolution of both partnerships and distribution of the partnerships' assets. The court also appointed a receiver to assist in the sale of the South Dakota land.

Separate judgments were entered on August 22, 1989, in the Bank's four actions on the promissory notes. Separate second amended judgments were entered in three of those cases on June 28, 1990. A second amended judgment in the fourth action on a promissory note was entered on March 7, 1991. An amended judgment in the action to dissolve Rabbit Creek was entered on September 26, 1990, and notice of entry of judgment was served on that day. An amended judgment in the action to dissolve SS & C was entered on December 10, 1990, and notice of entry of that judgment was served on January 3, 1991.

After the receiver submitted a final report and accounting about the partnerships' assets and the sale of the South Dakota land, the court entered a "Final Order Of Distribution Of Partnership Assets" in each of the six actions on March 18, 1991. In May 1991, Frank and David appealed from the Final Order of Distribution entered in each action. Additionally, in the action to dissolve SS & C, Frank and David appealed from an order denying their motion to vacate the sale of the South Dakota land.

At the outset of this appeal, the Bank and Douglas argue that the amended judgments in all six actions were final, and that the Schmidts have not perfected timely appeals from those amended judgments within "60 days of the date of the service of notice of entry of the judgment or order appealed from" under NDRAppP 4(a). The

Bank and Douglas assert that the amended judgments are not reviewable in the Schmidts' appeals from the Final Order Of Distribution. The Schmidts respond that the amended judgments were not final and appealable until the court approved the Final Order Of Distribution, so that the amended judgments were interlocutory and are reviewable in their timely appeals from the Final Order of Distribution. Here, the Schmidts appealed from the Final Order of Distribution within sixty days. This appealability question involves identifying the proper point of finality: Does the potential finality of the amended judgments in each of the six actions control over the patent finality of the Final Order Of Distribution later entered in each action?

We have a strong tradition "that no appeal lies from a judgment that is interlocutory and not final. *E.g., Anderson v. Bothum,* 77 N.D. 678, 45 N.W.2d 488 (N.D. 1950)." *Regstad v. Steffes,* 433 N.W.2d 202, 203 (N.D.1988). Rather, an interlocutory determination is reviewable on appeal from the final judgment. *Wells County Water Resource Dist. v. Solberg,* 434 N.W.2d 577 (N.D.1989). Our strong tradition against interlocutory appeals requires an appeal to be taken from a final judgment, or the equivalent under NDRCivP 54(b). *Barth v. Schmidt,* 472 N.W.2d 473 (N.D.1991). When unadjudicated claims remain to be resolved by a trial court, a satisfactory NDRCivP 54(b) certification is necessary for an appeal from a determination on some of the claims. *Gissel v. Kenmare Township,* 463 N.W.2d 668 (N.D. 1990); *Gissel v. Kenmare Township,* 479 N.W.2d 876 (N.D.1992). These finality principles control here.

In *Anderson v. Bothum,* 77 N.D. 678, 45 N.W.2d 488 (N.D.1950), we considered a partner's appeal from an "interlocutory judgment" that dissolved a partnership and appointed a referee to hear testimony on the value of the partnership property. We concluded that the "interlocutory judgment" did not finally determine the rights of the parties and contemplated further judicial action regarding the partnership property. We held that the appeal was not authorized by statute and dismissed it.

*Bothum* is consistent with decisions from other jurisdictions involving finality and appealability in partnership dissolutions. *DeGase v. DeGase,* 690 S.W.2d 485 (Mo.App.1985); *Bass v. Dalton,* 218 Neb. 379, 355 N.W.2d 225 (1984); *Bakewell v. Bakewell,* 21 Cal.2d 224, 130 P.2d 975 (1942); *see* 59A Am.Jur.2d *Partnership* § 1096 (1987). These precedents indicate that, for purposes of finality and appealability, there is a difference between a judicial determination about an arithmetic formula for the division of partnership assets and the subsequent distribution of the assets pursuant to that formula.

In *Bakewell,* the California Supreme Court recognized that a decree was final and appealable where, except for compliance with the decree, there was no question left for future judicial consideration, and that a decree was interlocutory and nonappealable where further judicial action was needed for a final determination of the rights of the parties. In *Bakewell* the court held that the judgment was not final, in part, because the lower court's judgment did not establish the proportional rights of the partners to partnership assets. *See also Price v. Slawter,* 169 Cal.App.2d 448, 337 P.2d 914 (1959) [judgment was final because the court ordered profits, earnings, losses, and liabilities to be shared by the partners on a one-quarter basis, and the distribution of any net proceeds from the sale of certain property was an arithmetical determination that did not require additional judicial action]; *David v. Goodman,* 89 Cal.App.2d 162, 200 P.2d 568 (1948) [judgment was not final because an accounting and determination of profits left more to be done than ministerial compliance with decree]; *see* 4 Am.Jur.2d *Appeal and Error* § 122 (1962). Although *Bothum* and these other precedents did not address a Rule 54(b) certification, they are consistent with our current framework under NDRCivP 54(b) for analyzing appeals when unadjudicated claims remain to be resolved by the trial court.

These appeals have an additional quirk because the trial court consolidated all six actions for trial, and then entered separate judgments and amended judgments in each action, before eventually entering the Final Order of Distribution in all six actions. In *Gissel v. Kenmare Township*, 463 N.W.2d 668 (N.D.1990), we considered whether a Rule 54(b) certification was necessary for an appeal from a post-consolidation order disposing of one of two cases that had been consolidated for all purposes. We adopted a flexible case-by-case approach which focused on the extent and purpose of the consolidation and the relationship of the consolidated actions. In *Gissel* the trial court had consolidated two actions involving a township board's alleged lack of compliance with statutory procedures for discontinuing a township road. In holding that a Rule 54(b) certification was necessary to appeal from the disposition of only one of the two cases, we emphasized that the trial court had consolidated the cases "for all purposes" and that both cases involved "extremely interrelated" issues.

Unlike the state of affairs in *Gissel,* the trial court here consolidated these six cases "for trial only" and entered a separate judgment in each case. Moreover, the Bank was not a party to the two dissolution actions. *See Heller v. Production Credit Association of Minot,* 462 N.W.2d 125, 128 (N.D.1990). None of the judgments, or the amended judgments, contained a NDRCivP 54(b) certification.

Although the four actions on the promissory notes were against the respective partners and Kathleen, we do not believe those actions were so closely interrelated with the two dissolution actions to need NDRCivP 54(b) certifications to be appealable. Rather, the separate judgments on

the four notes were final determinations of the rights of the Bank against the respective partners and Kathleen. *See Bothum.* Therefore we conclude that the amended judgments in the Bank's four actions on the promissory notes were final and appealable without a Rule 54(b) certification.

The Schmidts did not perfect timely appeals from those amended judgments on the promissory notes. Therefore, any issues about those judgments are not reviewable in the appeals from the Final Order Of Distribution entered in those four actions. Our review in those four actions is thus limited to the questions about the Final Order of Distribution, an order that really only directed payment and satisfaction of those four judgments out of the proceeds of the dissolutions.

■ However, the Schmidts have not raised any substantive questions about the judgments on the four promissory notes. Instead, the contested questions only affect the dissolutions of the two partnerships. The actions to dissolve Rabbit Creek and SS & C have common parties and closely interrelated questions. Those factors suggest the necessity of a Rule 54(b) certification for finality of a separate judgment in either dissolution. *Gissel. See also Matter of Estate of Starcher,* 447 N.W.2d 293, 296 (N.D.1989) ("In a supervised [probate] administration, an order entered before approval of distribution of the estate and discharge of the personal representative is not final and cannot be appealed without a Rule 54(b) certification.") Additionally, the several amended judgments in the dissolution actions do not unambiguously indicate that further judicial action is unnecessary for a final determination of the partners' rights, or that merely ministerial distribution of partnership assets remained.[1] *See Bakewell.* The finality of the amended judgments in the two dissolutions and the

---

1. The amended judgment of September 26, 1990, in the action to dissolve Rabbit Creek did provide that

> the assets of the partnership known as Rabbit Creek shall be maintained in their present status for a period of sixty (60) days from and after the date of entry of Judgment herein so as to allow each of the parties hereto to exer-

> cise their respective right of appeal from said Judgment. Should no appeal be taken, the assets of said partnership shall then be distributed in accordance with the foregoing.

While this tends to suggest some finality for that judgment, the interrelationship of that dissolution with the SS & C dissolution suggests otherwise.

reviewability of those judgments on appeal from the Final Order Of Distribution is problematic.

Ordinarily, an appealability question arises in a case when some part of the action remains to be adjudicated, and a dismissal means only that the appeal is not yet authorized.[2] *See Bothum.* In those situations, an effective appeal may be taken upon later entry of a final judgment, or the equivalent under Rule 54(b), and the substantive questions may be reviewed then. Here, the question is whether the Schmidts should have appealed from the amended judgments in the dissolution actions, or from the later Final Order Of Distribution entered in each action.

■ If the Schmidts should have appealed from the amended judgments, a dismissal has the effect of an affirmance, and any substantive question about those judgments will not be reviewed. We have a strong preference for deciding cases on the merits. *Houser v. Gilbert,* 364 N.W.2d 62 (N.D.1985). Under these circumstances, we decline to dismiss the two appeals in the dissolution actions, and we review those amended judgments as intermediary to the Final Order of Distribution appealed in those actions.[3]

■ The Schmidts contend that the sale of the South Dakota land was invalid because the North Dakota trial court did not have any jurisdiction over that land. We disagree.

In *Wacker Oil, Inc. v. LoneTree Energy, Inc.,* 459 N.W.2d 381 (N.D.1990), we considered the effect of a foreign judgment on real property in North Dakota. We held that a foreign judgment may not directly transfer title to real property located in North Dakota. We said that although a foreign state may have personal jurisdic-

tion over the parties and adjudicate their equities in that real property, a foreign court does not have in rem jurisdiction over the property, and, accordingly, cannot *directly* affect title to it. We observed that a foreign judgment may order the parties to execute a conveyance of real property located in North Dakota, thereby *indirectly* affecting title, and that the executed conveyance, not the judgment, transferred title. *See also McKenzie County v. Hodel,* 467 N.W.2d 701 (N.D.1991); *Rozan v. Rozan,* 129 N.W.2d 694 (N.D.1964). In *Higgins v. Higgins,* 60 S.D. 576, 245 N.W. 397 (1932), the South Dakota Supreme Court recognized this same jurisdictional concept for South Dakota land affected by a foreign judgment.

This concept applies to real property in a partnership dissolution. *Shuford v. Anderson,* 352 F.2d 755 (10th Cir.1965); *De Licea v. Reyes,* 87 Ill.App.3d 704, 43 Ill. Dec. 179, 410 N.E.2d 179 (1980); *see* Annot., *Venue of Action for Partnership Dissolution,* 33 A.L.R.2d 914 (1954). In *De Licea,* the court explained that, because an action primarily for an accounting and dissolution of a partnership is regarded as transitory and personal in nature, the residence of the partners, not the location of partnership assets, is the important factor. The court concluded that the action was primarily for an accounting and dissolution of an Illinois partnership that owned real property in Mexico, and held that, because the partners resided in Illinois, the action was proper there. The court also observed that title to the Mexico land could be indirectly affected by compelling the partners to execute deeds transferring the property.

In the action to dissolve SS & C, Douglas sought a dissolution, an accounting, and a winding up of the partnership affairs. Contrary to the Schmidts' assertion, that

---

**2.** In these cases, the trial court severed a claim about the disposition of earnest money from a failed sale of the South Dakota land. If a claim is severed, no Rule 54(b) certification is required for an appeal. *Farmers Elevator v. Farm Builders, Inc.,* 432 N.W.2d 864 (N.D.1988); *Buurman v. Central Valley School Dist.,* 371 N.W.2d 146 (N.D.1985).

**3.** Douglas also asserts that we should dismiss the appeal because the Schmidts have not caused a complete transcript of all intermediate motion hearings to be prepared. We decline to dismiss the appeal for that reason. However, it is clear that Schmidts, as the appellants, assume the risks and consequences for the failure to file a complete transcript. *Lithun v. DuPaul,* 447 N.W.2d 297 (N.D.1989).

action was primarily for an accounting and dissolution of SS & C, not for partition of the land. The trial court had personal jurisdiction over the parties and the South Dakota land was partnership property. The court therefore could indirectly affect title to the South Dakota land by compelling the partners to execute the necessary documents to transfer the property.

Here, the trial court ordered Frank and David to execute a warranty deed for the South Dakota property, thereby indirectly affecting title to the property. The executed deed, not the judgment, transferred the real property. Accordingly, we conclude that the sale of the land was valid.

▓ The Schmidts also contend that the trial court's division of the partnerships' assets was not fair and equitable because the partners were not adequately compensated for their labor and equipment. We affirm the division.

Subject to agreement between the partners, each partner shall be repaid for contributions by way of capital or advances to the partnership property and shall share equally in the profits and surplus remaining after all liabilities of the partnership. NDCC 45–07–01(1). Unless the partners agree otherwise, a partner is not entitled to compensation for acting in the partnership business. NDCC 45–07–01(6); *Olivier v. Uleberg*, 74 N.D. 453, 23 N.W.2d 39 (1946). The partnership agreement thus controls whether or not the partners are entitled to compensation for services provided to the partnership.

In this case, there were no written partnership agreements. In the action to dissolve SS & C the trial court found:

A) That each of the partners would contribute an equal amount of funding for the partnership so as to facilitate the acquisition of South Dakota farmland, and the development of such farmland into a viable farming operation, together with the annual operating costs of such farming operation.

B) That the partners David Schmidt and Frank Schmidt, previously engaged in their own private farming operation, would be primarily responsible for the annual farming operation, employing from time to time their personal farming equipment, and devoting their labor necessary for the partnership farming operation.

C) That the partners, having inspected said South Dakota farmland prior to it's purchase, had determined the necessity of considerable work in the contouring of said land as well as breaking said land so as to make the same suitable for small grain farming, and that the partner Douglas G. Candee would furnish heavy equipment essential to the surface contouring and the breaking of said farmland. In addition thereto, the partner Douglas G. Candee would furnish such additional farm labor as was determined necessary by the partners David Schmidt and Frank Schmidt.

D) That the partnership would acquire farm equipment essential to the farming of said South Dakota farmland, and that the partners David Schmidt and Frank A. Schmidt would have access to said partnership farm equipment for their private use in their private farming operation located in North Dakota. Further, that the partner Douglas G. Candee would furnish transportation equipment essential to the relocation of partnership equipment from South Dakota to the private farming operation of David Schmidt and Frank A. Schmidt in North Dakota.

\* \* \* \* \* \*

The contribution of labor, management, and equipment by each of the partners may not have been equal to that of every other partner. However, the partners demonstrated their agreement as set forth above, in that no annual claims other than in 1982, were made by any one partner for excess contribution on labor, management and/or equipment, nor were any records created at the time of such labor, management and/or equipment investments, such that the contributions of each partner could be reasonably ascertained. Further, at the annual 1982 meeting of the partners, Plaintiff Douglas Candee in response to the claim of Defendant David Schmidt, for excess

labor and equipment, did make payment to the Defendant David Schmidt in the amount of $5,987.53 for harvesting labor and equipment. This payment [was] made to correct any inequities in labor and contributions between and among the partners.

The trial court determined that the partners agreed that there was no requirement to equally furnish labor, management, and equipment and that the inequity in the amount of labor, management, time, and equipment was knowingly made by the partners. The court also determined each partner's capital contribution to SS & C, the assets and liabilities of SS & C, the net assets of SS & C available for distribution, and the following interest of each partner in SS & C's net assets: Frank—21.34%; David—42.52%; and Douglas—36.14%.

■ A trial court's findings of fact will not be set aside unless they are clearly erroneous. A finding of fact is clearly erroneous when the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Durward v. Nelson*, 481 N.W.2d 586 (N.D.1992). Here, there was evidence to support the trial court's findings about the oral partnership agreement and the lack of an agreement between the partners about the labor and equipment furnished by each partner. We are not left with a definite and firm conviction that the trial court made a mistake. The trial court's findings are not clearly erroneous, and under NDCC 45–07–01(6) and *Uleberg*, the partners were not entitled to compensation for their labor and equipment. We conclude that the trial court's distribution of the partnerships' assets was not erroneous.

■ David and Frank also contend that the trial court did not adequately consider partitioning the land. The trial court concluded that the South Dakota land was not suitable for partition. There was evidence that the partners had unsuccessfully tried to divide the land among themselves. Under those circumstances, we cannot say that the trial court erred in refusing to partition the land. We affirm the Final

Order Of Distribution Of Partnership Assets entered in each action.

Douglas contends that the appeals are frivolous and requests double costs and damages, including attorney's fees, under NDRAppP 38. Here, the appealability dispute presented complicated jurisdictional questions. Moreover, we do not believe the substantive disputes were so devoid of merit as to be frivolous. *Houser v. Gilbert*, 364 N.W.2d 62. Accordingly, we decline to award double costs and attorney's fees.

For reasons stated, the orders appealed from are affirmed, the motion to dismiss the appeal is denied, and the motion for double costs and attorney's fees under NDRAppP 38 is denied.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and JOHNSON, JJ., concur.