[File No. 7204]

LOUIS F. DEGEN, Appellant and Respondent, v. FRED
S. BROOKS, Respondent and Appellant

(43 NW2d 755)

Opinion filed August 28, 1950

*Robert E. Fredricks,* for appellant and respondent.
*Rittgers & Hjellum,* and *Herman Weiss,* for respondent and
appellant.

GRIMSON, J. Plaintiff brings this action for the dissolution of a partnership and for an accounting of the partnership business. The defendant admits the partnership but alleges fraud in the securing of the partnership agreement and claims it never became effective. Defendant then counterclaims for the time which it is claimed the plaintiff failed to devote to the partnership business. Prior to the trial the partnership had been dissolved by mutual agreement. Upon the trial the District Court awarded the plaintiff a judgment for $1824.89. From that judgment both parties appealed and asked for a trial de novo.

The evidence shows the plaintiff had worked at the plumbing trade since 1920 and had become a master plumber. The defendant also was a licensed plumber and had worked at the plumbing and heating trade for more than fifteen years. He had also worked as a brakeman and conductor on the Northern Pacific Railway and had acquired considerable business experience. Neither party seems to have accumulated much property nor been in business of their own until 1947.

About the 1st of March 1947 the defendant established his own plumbing and heating business at Jamestown under the name of Brooks Plumbing & Heating. Plaintiff and defendant had been acquainted for over 20 years and had at times worked for the same concern. About the middle of May 1947 the plaintiff approached the defendant for a partnership. After several conversations an oral agreement was reached between them whereby a partnership was to be established on June 15, 1947, under the name of Brooks & Degen Plumbing & Heating. At that time the defendant listed the assets of his Brooks Plumbing & Heating concern at $3594.54. The plaintiff was to pay the defendant $2000.00 for a one-half interest therein and those assets were to form the capital of the new concern. Both parties were to devote the whole of their time to the business enterprise. Defendant was to be business manager and have charge of the office and accounts. He was also to have charge of the hot air heating and sheet metal work. Plaintiff was to have charge of plumbing and outside installations. Plaintiff paid to the defendant on this arrangement $300.00 cash and was to pay $1700.00 later. Plaintiff testified:

"Q: On what terms was this agreement made?

A: Well, that was on a 50–50 basis.

Q: What do you mean by 50–50 basis?

A: In dividing any profits.

Q: How about losses?

A: Well the losses as well as the profits. . . .

Q: Was it agreed how much of that $4000.00 you would pay Mr. Brooks for a share of the business?

A: I was supposed to pay half.

Q: How much would that half be?

A: Approximately $2000.00.

Q: And how much of that did you pay at that time?

A: I paid $300.00.

Q: What, if any, arrangements were made by you and Mr. Brooks as to the payment of the balance of $1700.00?

A: Well, I was supposed to put it in as I could raise the money or it was agreed that he would take his balance out of the profits of the business.

Q: Was anything said as to when this balance should be paid or anything along those lines?

A: No, sir, not that I recall."

Mr. Brooks testified on direct examination:

"Q: Did you converse relative to the partnership affairs?

A: Yes sir.

Q: What transpired then?

A: Well he put it up to me this way: After I had explained to him that we couldn't hire experienced help and that materials were very scarce, (he said) that if I would take him with me we would hire a group of those G.I. boys and train them to be plumbers and steam fitters and that he would—we would take an inventory and he would buy out one-half of my interest and pay cash for it.

Q: And did you arrive at that time at what a half interest would be?

A: A few days later we did take an inventory.

Q: And what did you arrive at as being the half interest in the business—what the amount should be?

A: At that particular time the inventory was $3500 and some odd dollars.

Q: Did you consider your tools in the inventory?

A: The tools were not considered.

. . .

Q: When did you actually take Mr. Degen into this business when you started operating as Brooks & Degen?

A: As of June 15, 1947.

Q: Was there anything in writing between you and this gentleman?

A: No.

Q: Didn't you tell Mr. Degen that you wanted a partnership agreement in writing?

A: Yes sir.

Q: Did that ever transpire?

A: No sir.

Q: Why not?

A: Because I told him that he couldn't be considered a partner until such time that he put in his equal share of capital.

Q: Did you ever ask him?

A: Many, many times.

. . .

Q: Was there any discussion between you and Mr. Degen when you were to get the balance of $1700.00 which he was short out of the profits of the business?

A: Never. He suggested that one day and I told him that would be just like taking money out of one pocket and putting it into another, and I told him I had worked too hard for that money and I couldn't do that."

. . .

A: Mr. Degen told me that he would get his $2000.00 within ten days and the agreement—the conversation that we had the evening we made the final deal was that there would be no partnership until we each had both of our money in there. Because I told him we couldn't operate unless we had more money because I was operating to the very limit of my capital, and there was no chance of expanding on the limited capital that I had,

so there would be no object in taking in a partner and having no more money, and he agreed with me and it was understood between he and I on the agreement that there was no partnership until such time that we contributed our equal share in this business, and it was operated that way since."

. . .

In answer to questions by the court, Brooks testified:

"Q. If Degen had put in what he was supposed to put in when you started this business would you have a capital of more than $4,000?

A: No, he was supposed to pay that to me personally.

Q: You put in the money that he was supposed to put in?

A: That is right; I put in the money for both of us.

Q: Except that $300.00?

A: Yes sir. He didn't owe the business any money—he owed me personally.

. . .

On cross examination Mr. Brooks testified:

"Q: The next day you made the contract by accepting the proposition?

A: I accepted it when he was going to put (in) the money.

Q: It was made on the trip to Fargo?

A: It was made the night before.

Q: And accepted on the trip to Fargo?

A: Yes sir, that is right."

Plaintiff claims that under the arrangement thus orally made he became an equal partner with the defendant in the new concern and was to share equally in the profits and losses. The defendant claims that the equal partnership was contingent upon the payment of the $1700.00, and that his failure to pay that constituted a fraud.

"Partnership is the association of two or more persons for the purpose of carrying on business together and dividing the profits between them." Sec 45–0101 NDRC 1943. "A partnership may be formed only by the consent of all parties thereto. . . ." Sec 45–0102 NDRC 1943. A partnership "is to be deter-

mined from the intention of the parties, as expressed in the partnership agreement or *gathered from the acts and circumstances.*" Shirley v. Straub, 50 ND 872, 198 NW 675.. "Partnership is a relation arising out of contract and a partnership inter sese arises only out of the contract of. the parties as expressed in their agreement or *implied from their dealings with each other. . . .*" 47 CJ 648. "As between partners, the ultimate facts whence a partnership is deduced are—first, the agreement; and second, *its execution, summed up as the executed agreement.*" Shriver v. McCloud, 20 Nebr 474, 30 NW 534.

Considering the evidence in the light of these principles it shows that the firm of Brooks & Degen Plumbing & Heating began operations on June 15, 1947, with both parties active therein. Defendant, Brooks, as office manager opened a set of books and a bank account in the name of Brooks & Degen Plumbing & Heating and had bank checks printed that way. He had the books kept on a partnership basis showing the plaintiff as one-half owner. He had the telephone and city directory listings changed to that name. He had Brooks & Degen placed as signs on the shop and the trucks; some as late as 1948; he had stationery and bill heads printed in the name of Brooks & Degen. A reciprocal insurance policy of $10,000.00 was taken out whereby if one of the partners died his widow got the $10,000.00 and the surviving partner got the business. Each drew checks on the partnership account at will until October 1948 when Degen's drawing account was limited to $70.00 per week. Reports of sales tax, withholding tax, social security, workmen's compensation and income tax, were all made in the name of Brooks & Degen, each listed as one-half owner of the partnership. In all of these reports Degen was listed as an equal partner. All of them were made under the supervision of defendant, Brooks. Contracts and bonds were excuted by the Brooks & Degen Plumbing & Heating.

The conduct of both partners towards each other and towards the public indicated a partnership. Even the examination and answers on the trial showed that all concerned believed a part-

nership had been formed. In response to questions of his own counsel the defendant, Brooks, testified:

"Q: Now, the formation of this partnership was made on the 15th day of June 1947?

A: A couple of days before that.

Q: Now being that Mr. Degen didn't put in his $2000.00 as he had agreed, why didn't you terminate this partnership sooner?

. . .

A: The reason we didn't terminate it is because we had become involved in some considerable amount of work and there weren't any plumbers to be hired and we had signed-joint contracts and we were bonded for some jobs; we just had to go ahead with the jobs, otherwise we would have defaulted on a contract and automatically would have went out of business. . . ."

The Court: "Who did sign those contracts, 'Brooks' or 'Brooks & Degen'?

A: Brooks & Degen."

Brooks admitted that the $1700.00 was due to him personally and was not a partnership asset. The assets of the partnership would not have been increased by that payment. He knew at the beginning that Degen didn't have that money and extended him some time for paying it. He could have withdrawn from Degen's share of the profits of the partnership part payments on this debt, as offered by Degen, had he desired. The books showed that on Dec. 29, 1948, there were $1032.50 coming to Degen out of his one-half share of the 1948 profits.

No fraud can be spelled out even of Brooks version of the agreement. He extended credit to Degen with the knowledge that he couldn't pay the money immediately. Failure to pay under such circumstances cannot be called fraud. 37 CJS 231. The partnership had the capital contemplated and in addition had the services of both Brooks and Degen. Degen's labor and skill brought material additions to the business of the concern. The books show that its net assets after his services were combined with those of Brooks increased from $3594.54 on June 15, 1947

to $16,234.26 on Dec. 31, 1948, an increase of $12,639.72 in 18½ months.  In addition to that the defendant, Brooks, had drawn out of the business $7013.22 and plaintiff, Degen, $6407.66.  The volume of work and business transacted increased more than eight times during that time.

"Parties who have admitted that they are in partnership, either by express statements or *by conduct* will be held to that admission."  Cobb v. Martin, 32 Okla 58, 123 Pac 422.  "In actions between alleged copartners, the doctrine of estoppel will be applied where one of the parties . . .. having accepted and acted on an agreement to form a partnership now seeks to disclaim the relation."  47 CJ 686, Sec 76.  "After the defendants have, for several years, recognized the plaintiff as a copartner, and received the benefit of his services in that capacity, it is too late for them to set up, in avoidance or denial of the partnership, either the nonpayment by him of his share of the capital stock, or the nonexecution of written articles of partnership."  Pierce & Campbell v. Whitley, 39 Ala 172.  "Partnership relation exists, although conditions of partnership are not understood alike by partners, when persons agree to become partners and actually proceed to carry into execution the joint undertaking or business."  Cook v. Carpenter, 34 Vt 121, 80 Am Dec 670.

The only dispute raised in the evidence is as to whether the partnership was to commence June 15, 1947, as claimed by the plaintiff or not until Degen paid his $2000.00 in full as claimed by the defendant.  The defendant's explanation does not support his contention.  He says he had to have that $2000.00 to increase the capital of the partnership.  At the same time he admits that that money was owing to him personally and not to the partnership.  The plaintiff's argument to get veterans' labor was a better reason for the partnership.  What defendant needed to increase his business was labor rather than money as is shown by the result of the partnership.  In all his acts defendant recognized the plaintiff as a partner and he took advantage of his services in that capacity.  He is too late now to avoid the results of his actions which entirely support the contention of the plain-

tiff. The evidence clearly shows a community of interests and profits—the essence of a partnership contract. Story on Partnership, 7th Ed 20, Sec 18. This court finds that a partnership was formed on an equal basis commencing June 15, 1947.

On that basis we will proceed to consider the accounting between the parties. Prior to the trial of the case the plaintiff demanded of the defendant, Brooks, who was in charge of the books of the partnership, an accounting of the partnership business during the period from June 15, 1947 to Jan. 1, 1949. This accounting was furnished by means of statements prepared from the books of Brooks & Degen Plumbing & Heating by an accountant under the supervision of the defendant, Brooks. The defendant, Brooks, testified that the accounting so furnished by Exhibits 1 to 10 was a true statement of the partnership business from June 15, 1947 to Dec. 31, 1948. Plaintiff accepts those statements as true and they were taken by both parties as reflecting the actual value and standing of the partnership business on Dec. 31, 1948. Plaintiff asks for an accounting based thereon. Defendant makes no objections thereto except as he has tried to avoid the existence of the partnership.

These statements show that the assets of Brooks & Degen Plumbing & Heating on June 15, 1947 were valued at $3594.54, one-half of which, $1797.27 was credited to each of the partners. As of Dec. 31, 1948, these statements show the gross worth of the assets of Brooks & Degen Plumbing & Heating valued at $21,118.42.

From that, however, several deductions are made. On some of these deductions both parties agreed. Depreciation of $1216.00 was allowed; accounts payable of $1852.72 existed at that time. Sales tax of $267.69, social security tax of $49.15 and personal property tax of $111.53 were unpaid. It was stipulated that there were excess Workmen's Compensation payments due not to exceed $100.00 and excess liability insurance due not exceeding $100.00. Then the books show there was due defendant, Brooks, $426.94 out of his one-half share of the 1948 profits and to the plaintiff, Degen, $1032.50. It also appeared that there were overtime wages due to the plumber's assistant, McKenzie,

$222.00. The total of these agreed deductions amounted to $5378.53.

Then defendant, Brooks, testified that after Dec. 31, 1948, some claims developed for repairs on work that had been done by the partnership prior to that date but of which he had no knowledge when making the statement of accounts. The work of the partnership was generally guaranteed for a year. Brooks testified that he had to repair a pavement laid down in 1948 at an expense of $124.25; that he had to replace a defective humidifier at a cost of $13.00; that he had to replace plaster on a 1948 job at a cost of $11.00; that a sand point, admittedly taken out by Degen and not accounted for cost $4.50. These claims amounted to a total of $152.75. It seems only fair that they should be allowed. They were incurred as an expense in connection with the 1948 business and are properly chargeable against that business.

Defendant also claims that an automobile had been taken in during 1948 for a partnership account and that when he sold it after Jan. 1, 1949, he took a loss of $200.00 on that automobile. The statement of the assets does not itemize the merchandise inventory of the partnership but lumps it at a value of $7818.26. This automobile must have been included therein as there is no other place in the accounting where it can be included. The evidence indicates that the values placed on the merchandise were based on cost which seems to have been satisfactory to both parties. The transfer of the title to the merchandise from the partnership to the defendant, Brooks, took place as of Dec. 31, 1948. Whether the values have depreciated or appreciated since that time is immaterial in this accounting. Defendant, Brooks, took the property subject to such changes. His claim for $200.00 loss on the automobile must be disallowed.

He makes another claim for $298.65 to repair his trucks on account of the wear and tear during 1948 in order to place them in running order for 1949 business. He had, however, taken over the cars and trucks of the partnership on Dec. 31, 1948, at a cost price less depreciation. He is bound by that.

The defendant, Brooks, in his counterclaim asks the sum of

$14,181.00 as damages for what he claims to have been the failure of the plaintiff, Degen, to devote his whole time to the affairs of the Brooks & Degen Plumbing & Heating concern. He makes a broad statement in his testimony that the plaintiff failed to work 50 per cent of the time. To support that he introduces the testimony of his bookkeeper to the effect that according to the time slips and records of the business Degen only worked 1348 hours during the year 1948 while a full year of 52 weeks at 48 hours a week would amount to 2496 hours per year. He claims that leaves 1148 hours or approximately 24 weeks during which plaintiff was absent from work. The only instances he points out, however, are some absences at the time of plaintiff's mother's illness and funeral and in connection with her business affairs. Further he testified that the plaintiff would not arrive at the office until noon on many occasions without, however, specifying any definite times. The bookkeepers corroborate him in that but admit plaintiff may have been at work on a job on such occasions.

Plaintiff admits that he was absent looking after his mother's affairs and during her illness at least 15 days and for the settling of her estate 4 or 5 days. All the rest of the working time he claims to have devoted to the partnership. He admits that the time slips may not show any more than what the bookkeepers testified but claims that when he was at work on partnership business where the work was on a contract job or on work such as estimating or around the office or around the shop he did not put in time slips. They were necessary as far as the time of the partners was concerned only when their labor was to be included as a part of the cost to the customer. The partners were paid no wages. He says he sometimes was delayed in the morning because he could not start the old truck he was furnished, or that sometimes he was called out on emergency jobs at night and then stayed home later in the morning, and that sometimes he went direct to the job without reporting at the office. Defendant's witnesses admit these things may have occurred. A Mr. McKenzie was defendant's helper during a large part of 1948. It is admitted that his time slips show him steadily at work and McKenzie testified that plaintiff was usually with him. He was

a veteran being trained under the Veterans' Job Training Program.

He testifies:

"Q: During 1948, after March 1948, you say you worked as Mr. Degen's helper?

A: Almost entirely.

. . .

Q: I will ask you to state whether or not you ever went on a job direct in the morning—that is to say, for instance, you were working on a contract job, would you go direct to the job or direct to the office first?

A: I always went to the office first.

Q: Did you sometimes find Mr. Degen was already on the job when you arrived there?

A: I did.

. . .

Q: I ask you to state whether or not Mr. Degen put in about the same time that you did on the job?

A: Approximately.

Q: Except those times that he was gone on his mother's business, is that it?

A: Yes sir, that is right.

Q: It is a fact that on occasion he did not work in the morning?

A: A few mornings he failed to show up.

Q: Was that a common occurrence or do you know?

A: Not too common.

Q: When he did not show up where did you work, Mr. McKenzie?

A: Sometimes he would call me up and tell me where I was supposed to work if he knew the night before that he wasn't going to show up.

Q: Well, generally was Mr. Degen on the job as far as you know?

A: As far as I know he was.

Q: Would you be with him on any of these emergency night calls or not?

A: I was with him on one or two occasions."

Cross examination.

"Q: How did you get to your job in the morning when you had a job away from the place of business—How did you get there?

A: I usually rode with Mr. Degen in the truck.

. . .

Q: But would Mr. Degen take you to a job and leave you alone?

A: Yes sir, he did.

Q: How long would you be operating there alone?

A: Until noon and sometimes in the evening."

While this shows some part day absences from a particular job it does not show that he was not even then on partnership business nor does it show such neglect as defendant claims.

Defendant produced no testimony of any time or place where plaintiff had neglected the job or where his work had been unsatisfactory. No damage or loss of work is shown on account of plaintiff's absence from work. On the contrary plaintiff produced a property owner for whom Degen & Brooks had done considerable work largely under the supervision of Degen. He testified that the work was done in a very satisfactory manner and that Degen was on the job early and late, sometimes working after hours.

He also produced Gilbert A. Horton, an architect on several contract jobs performed by Brooks & Degen Plumbing & Heating. He testified to the satisfactory work performed by both members of the firm. He testified:

"Q: Was the work held up by Mr. Degen's absence?

A: Not to my knowledge.

Q: Did the work progress satisfactorily?

A: Yes, sir."

Brooks was asked on cross examination:

"Q: Can you tell me the name of a job where he (Degen) fell down on the job due to drinking?

. . .

A: I cannot; that wasn't what was meant in that answer in the first place."

The burden is on the defendant to prove his counterclaim. He has failed to do that except to the extent that the plaintiff admitted absence of about a month looking after his mother's affairs during her sickness, funeral, and the administration of her estate.

Ordinarily, the right of a partner to participation in the partnership profits is not based on the extent of his services to the partnership unless there is a special agreement to that effect.

"By the well settled law of partnership every partner is bound to work to the extent of his ability for the benefit of the whole without regard to the services of his copartners and without comparison of value; for services to the firm cannot, from the very nature, be estimated and equalized by compensation of differences." 1 Rowley's Modern Law of Partnership, 405, Sec 351. See also Story on Partnership, 7th Ed 305, Sec 182. That rule applies in the case at bar to those one-half days which the evidence shows plaintiff's time is not definitely accounted for.

A different rule applies with regard to the time during which he admitted he devoted to other matters than the partnership interests. "If one partner refuses without good cause to perform the services to which he has agreed, the other will usually be given an allowance therefor, or a deduction will be made from the share of the partner who did not perform his agreed service." 1 Rowley's Modern Law of Partnership, 415, Sec 356. See also Story on Partnership, 7th Ed 293, Sec 173.

In the case of Olivier v. Uleberg, 74 ND 453, 23 NW 2d 39, 165 ALR 974, this court held that "a partner who neglects and refuses, without reasonable cause, to perform personal services which he has stipulated in the partnership agreement that he will render the partnership, is liable to account to the firm for the value of the services in the settlement of the partnership accounts." See also Lay v. Emery, 8 ND 515, 79 NW 1053, Anno 165 ALR 981.

In the instant case each party agreed to devote the entire working time to the interests of the partnership. Plaintiff ad-

mits that he absented himself on other business for approximately four weeks. While he may have had a good excuse for that absence the evidence does not show that he consulted the defendant or secured his consent and approval nor does it show that he made any arrangements for the carrying on of his work in the partnership during such absence. Under the circumstances shown in the evidence in this case it seems fair and equitable that the plaintiff should reimburse the partnership for its loss on account of his said absence.

The measure of damages for such absence is the value of the services wrongfully withheld. See Marsh's Appeal, 69 Pa 30, 8 Am Rep 206. It seems that to find the value of such services the fairest way is to take the total earnings of the partnership for the time it was in existence and divide it by the number of weeks both parties worked. The result would show the value of the services of each partner per week when taken as of equal value.

Defendant's statement of account for the period of the existence of the partnership from June 15, 1947 to Jan. 1, 1949, shows that on June 15, 1947 the net assets of the partnership were listed as $3594.54 and on Dec. 31, 1948, they were listed at $15,088.49 (hereinafter found to be $16,234.26) making an increase in the net assets of the partnership as listed during that time of $11,-493.95. The statement also shows that defendant, Brooks, had drawn out $7013.22 in cash, and plaintiff, Degen, $6407.66. The total earnings of the partnership, therefore, during that time amounted to $24,914.83. Defendant Brooks claims to have worked steadily during that whole time which would make 28 weeks in 1947 and 52 weeks in 1948 or 80 weeks in all. Plaintiff claims to have worked the whole time in 1947 and 48 weeks in 1948 or a total of 76 weeks. That makes a total of 156 weeks worked by both partners. Dividing the total earnings, $24,-914.83 by the number of weeks worked by both partners, 156, makes the value of the services of each partner, $159.71 per week. Plaintiff admits he lost four weeks. The value of that loss to the partnership would be $638.84 with which amount the plaintiff must be charged. This amount of $638.84 becomes an asset of the partnership.

A summary of the assets and liabilities then is as follows:

| | | |
|---|---|---|
| Gross assets of the partnership as shown by Exhibit 6, the balance sheet, | | $21,118.42 |
| Additional asset on defendant's counter-claim against Degen, | | 638.84 |
| Total gross assets, | | $21,757.26 |
| Liabilities: | | |
| Agreed deductions heretofore set out, | $5378.53 | |
| Allowed claims since Dec. 31, 1948, | 152.75 | |
| Total, | $5531.28 | 5,531.28 |
| Net worth as of Dec. 31, 1948, | | $16,225.98 |

The statement of account furnished by defendant Brooks shows that in those assets were included accounts receivable in the sum of $8971.38. The accounts seem to be listed at face value. That listing was done by the accountant upon consultation with defendant, Brooks. Brooks admits giving due consideration to the matter yet he says in his testimony that no account is absolutely certain until it is paid. There is nothing in the evidence to warrant this court in passing upon division or value of those accounts. All this court can determine is that each of the partners has a one-half interest in all the accounts receivable. Further accounting and disposition of that must be made in District Court.

Deducting that sum, $8971.38, from the net assets, $16,225.98, leaves $7254.60 as the assets of the partnership that can now be divided in this court, one-half of which, $3627.30, belongs to each partner.

In addition to that the exhibits show accounts receivable in the sum of $774.26 which were marked doubtful and not included in the assets but in which each partner has a one-half interest and which must be referred back to the District Court with the other accounts receivable.

The evidence also shows that each partner furnished his private tools for the use of the partnership which were not counted as assets of the partnership. Testimony, however, shows that the average life of plumber's tools is only two years so that there may not be much left of those tools now. Whatever is left, however, of the tools plaintiff, Degen, brought with him still belong to him and he is entitled to the return thereof.

Plaintiff, Degen, also has the balance of his share of the profits for 1948, $1032.50 coming from the partnership which, added to his one-half interest, $3627.30 makes a total of $4659.80 that he has coming out of the presently distributive assets of the partnership. The plaintiff, however, owes the partnership $638.84 for loss of time as heretofore found. He further owes the defendant, Brooks, $1700.00 balance on purchase price of the assets of the Brooks Plumbing & Heating, with interest thereon at 4% from June 15, 1947. That interest, however, should cease on Dec. 31, 1948, when defendant, Brooks, took over the assets of the partnership. Plaintiff's share therein was then more than sufficient to pay that debt. The interest then amounted to $105.00. A summary of plaintiff, Degen's present account against the defendant, Brooks, therefore, is as follows:

| | | | |
|---|---|---|---|
| One-half interest in the present distributive assets of the partnership, | | | $3627.30 |
| Balance of his 1948 profits in the partnership, | | | 1032.50 |
| | | Total, | $4659.80 |
| Deductions: | | | |
| Owing to the partnership, | | $638.84 | |
| Owing defendant, Brooks, principal, | | 1700.00 | |
| | interest, | 105.00 | |
| | Total, | $2443.84 | $2443.84 |
| Balance due plaintiff from defendant, | | | $2215.96 |

The case is remanded to the District Court for a further accounting and disposition of the accounts receivable and the District Court is directed to make an order for a dissolution of the partnership and for a judgment for the plaintiff, Louis F. Degen, against the defendant, Fred S. Brooks, for the sum of $2215.96 with interest at 4% since Dec. 31, 1948, and for a lien on the partnership assets for the payment of this judgment and what will be due plaintiff upon the accounts receivable, as provided by Sec 45–0107 NDRC 1943.

NUESSLE, C. J., CHRISTIANSON, BURKE and MORRIS, JJ., concur.