# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-2717

_____

Thomas Richard Tarnavsky,       \*

       \*

       Plaintiff - Appellee,     \*   Appeal from the United States

       \*   District Court for the

    v.       \*   District of North Dakota.

       \*

Morris Tarnavsky; Edward Tarnavsky;  \*

       \*

       Defendants - Appellants.   \*

       \*

_____

Submitted:  February 13, 1998
Filed:  June 10, 1998

_____

Before FAGG, JOHN R. GIBSON, and MURPHY, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge

Thomas Richard Tarnavsky, known as T.R., filed suit against his two brothers, Morris and Edward Tarnavsky, requesting an accounting and payment of T.R.'s interest in an alleged partnership between himself and Morris.  The district court[1] concluded that a partnership existed between T.R. and Morris, and entered judgment for

_____

[1]The Honorable Patrick A. Conmy, United States District Judge for the District of North Dakota.

$220,000, plus interest, against Morris and Edward. Morris and Edward appeal, arguing that the facts do not support a partnership, or, alternatively, that even if a partnership exists, the court's accounting is erroneous. In addition, they claim that the district court incorrectly determined the date of dissolution of the alleged partnership, and that, with the proper dissolution date, T.R.'s claim is barred by the statute of limitations. We affirm.

## I.

Before 1967, Mary Tarnavsky, with the help of her three sons, T. R., Morris, and Edward, controlled and operated a 2,840 acre ranch (Mary's ranch) in McKenzie County, North Dakota. Of these 2,840 acres, Mary individually owned 2,200 acres, Mary and Morris jointly owned 480 acres, and Edward owned 160 acres. In 1967, Mary, Morris, and T.R. jointly purchased 1,890 acres of adjoining land, referred to as the Christ place. Mary paid 50% of the purchase price as a down payment, and the parties assumed an existing contract for deed to the Christ place. T.R. and Morris opened a bank account, the Tarnavsky Brothers account, which was used to make payments on the Christ place contract for deed, to pay the Christ place property taxes, and to purchase cattle, equipment and related supplies and services under the partnership name. T.R. alleges that upon acquiring the Christ place, he and Morris orally agreed to form Tarnavsky Brothers partnership to operate the Christ place ranch with T.R. and Morris equally sharing the profits and losses of the partnership.

Since the acquisition of the Christ place in 1967, the parties have operated the entire 4,730 acres (the Christ place and Mary's ranch) as one unit, commingling cattle

and farming operations. When cattle were sold, Mary received one-half the proceeds and T.R. and Morris received the other half. Grain proceeds were also distributed in this manner until 1973, the year Edward returned from college and began raising the grain on both ranches. At this point, Edward began receiving ten percent of grain proceeds, Mary received 45%, and Tarnavsky Brothers received 45%. On each of these occasions, Morris and T.R.'s share of the proceeds was deposited in the Tarnavsky Brothers bank account.

In 1980, Mary decided that she no longer wanted to receive proceeds from the sale of grain or cattle. Thereafter, Tarnavsky Brothers received 100% of the cattle proceeds, and 90% of the grain proceeds. Edward still did the farm work and received 10% of the grain proceeds.

Since 1967, Morris has worked full time on the ranch. In addition to handling other ranching responsibilities, Morris has been in charge of handling the livestock. Edward has worked full time on the ranch since he returned from college in 1973. Along with performing other tasks, Edward has been in charge of planting and harvesting grain on the ranch.

In 1967, T.R. lived in Bozeman, Montana, which is located about 500 miles from the ranch. In addition to occasionally working on the ranch, T.R. was in charge of bookkeeping. T.R. remained in Bozeman until 1977, when he and his wife moved to Sidney, Montana, which is about 75 miles from the ranch. At this point, T.R. spent more time working on the ranch, but the parties strongly dispute the amount of T.R.'s participation. In 1988, T.R.'s wife began to suffer severely from cancer. Thereafter,

T.R. stopped being the "bookkeeper" and spent very little time working or participating in ranch activities.

After Mary's death in 1991, T.R. spent little or no time at the ranch. In March of 1992, Morris sent T.R. a Notice of Dissolution of Partnership. After attempts to settle the partners' accounts were unsuccessful, T.R. filed suit, claiming he and Morris had a partnership and requesting an accounting and payment of his partnership assets. The district court concluded that Morris and T.R. were partners, and ordered judgment of $220,000 in favor of T.R.[2]

## II.

On appeal, Morris and Edward argue that the district court erred in concluding that a partnership existed between T.R. and Morris. The existence of a partnership is a mixed question of law and fact. See Frankel v. Hillier, 113 N.W. 1067, 1070 (N.D. 1907). There is no challenge to the district court's factual findings, and the ultimate conclusion of whether a partnership existed is a question of law, which we review de novo. See Newman v. Williams, 875 F.2d 668, 670 (8th Cir. 1989).

Under North Dakota law, a partnership is "an association of two or more persons to carry on as co-owners a business for profit." Gangl v. Gangl, 281 N.W.2d 574, 579

_____

[2]The $220,000 judgment represents T.R.'s share of the personal property, and was issued against both Morris and Edward due to distributions each had taken from the Tarnavsky Brothers bank account since the notice of dissolution. The district court did not include the Christ place real estate as a partnership asset, and neither party appeals this portion of the decision.

(N.D. 1979); N.D.Cent. Code. § 45-13-01(4) (1997). "The existence of a partnership is not governed by one conclusive criterion but by the facts and circumstances of each case." See Gangle, 281 N.W.2d at 579. However, certain elements are critical to the existence of a partnership. Id. These elements are: (1) an intention to be partners; (2) co-ownership of the business; and (3) profit motive. Id.

The district court held that "there is no question that the parties, T.R. and Morris, were partners." In reaching this conclusion, the district court did not specifically address the three elements critical to the existence of a partnership. The court simply recited the factual background concerning the parties' relationship. Appellants do not argue that any of the district court's factual recitations are clearly erroneous. The facts set forth above are taken from the district court's memorandum opinion and from statements in appellants' brief which are uncontested.

The Tarnavskys do not differ as to the facts establishing the relationship, but differ only as to its nature. Appellants argue that, based on the evidence as a whole, the district court's determination that there is a partnership is clearly erroneous. Specifically, they argue that the fact that T.R. and Morris filed partnership tax returns is not conclusive on "partnership intent." Additionally, they argue that "co-ownership" has not been established, as Morris and T.R. did not "share profits" or have the power of "control" over management of the business.

Morris and T.R.'s intent to be partners is established by the evidence. Although not determinative, it is uncontradicted that T.R. and Morris reported their farming activities on state and federal partnership income tax returns for over twenty years.

From 1967 through 1987, T.R. prepared the "Tarnavsky Brothers" partnership tax returns, which Morris signed, showing a 50/50 allocation of profit and losses to T.R. and Morris. When Morris took the "bookkeeping" over from T.R. in 1988, he had an accountant prepare the "Tarnavsky Brothers Ranch" partnership tax returns for 1988, 1989, and 1990, which continued to show a 50/50 allocation of profit and losses to T.R. and Morris. This is strong evidence of Morris and T.R.'s intent to be partners. In addition to filing Tarnavsky Brothers partnership returns, appellants concede that Morris and T.R. opened a joint bank account entitled Tarnavsky Brothers. From this account, they made the Christ place property payments, purchased cattle, seed, and related supplies. Appellants also concede that T.R. and Morris purchased cattle and equipment and borrowed money under the name Tarnavsky Brothers. Furthermore, T.R. and Morris jointly engaged in a cow share arrangement with another farmer, and later jointly purchased his share of the calves. These actions by Morris and T.R. evidence their intent to be partners.

Co-ownership, the second element necessary for a partnership, includes the sharing of profits and losses as well as the power of control in the management of the business. See Gangl, 281 N.W. 2d at 580.

Morris and Edward argue that T.R. and Morris did not "share" profits because neither party took profit distributions from the Tarnavsky Brothers account. This argument is without merit. It is undisputed that after completing a sale of cattle or grain, the brothers would deposit their share of the income in their joint account. From this account, the brothers jointly paid expenses and used the remaining money (the profit) to purchase machinery, cattle, and make land payments on the Christ place

property. Any remaining profit stayed in the joint account, accumulating over time. Although the money was not distributed, jointly purchasing land and machinery with profits is a form of profit sharing. See Gangl, 281 N.W.2d at 579. Further evidence that the brothers shared profits is that at the end of each year, Morris and T.R. would allocate the year's profits on the partnership income tax return equally between themselves, with each party being liable for his share of profits on his personal income tax return. This sharing of profits is further evidence that Morris and T.R. were partners. See N.D. Cent. Code § 45-14-02(3)(c) (Supp. 1997).

Morris and Edward also argue that Morris and T.R. did not have the power of control over the management of the business. They argue that the Christ place was melded into the overall operation of the family ranch subject to Mary's control, and that the power to make decisions and to distribute income rested solely with Mary, and not with T.R. or Morris. This argument is also without merit.

Appellants concede that from the beginning purchase of the Christ place Morris and T.R. opened a joint bank account, took out joint partnership loans, and jointly purchased cattle and machinery in the partnership name. Appellants also admit in their brief that both Morris and T.R. were involved in working with banks to secure loans for cattle and equipment purchases, and that both T.R. and Morris handled "marketing the cattle" and performed various administrative functions, such as the discussion of rations. Furthermore, appellants state in their brief that Morris was "in charge" of livestock production and "administered" equipment purchases, and that T.R. was "in charge" of paperwork and finances. This is strong evidence that T.R. and Morris both had the power of control over management of the business. The argument that Mary

controlled all business decisions is even less forceful for the period after 1980, when Mary's involvement in the ranch diminished, and all proceeds from grain and cattle were distributed either to the Tarnavsky Brothers account or the Tarnavsky Ranch account.[3]  Appellants make numerous arguments that any authority Morris and T.R. appeared to have was purely illusory, granted to T.R. and Morris by Mary so that Mary could accomplish certain objectives.  These arguments were rejected by the district court.  Although Mary may have been the lead figure in the "commingled" ranching operation until 1980, ample evidence illustrates that Morris and T.R. had the power to control business decisions relating to Tarnavsky Brothers partnership.  Control, when combined with profit sharing, strongly suggests the existence of a partnership.  See Gangl, 281 N.W.2d at 580.

The final critical element of a partnership is profit motive, and there is no dispute that the farming business was operated with such motive.

We thus conclude that the district court's findings and the uncontested facts recited by appellants are sufficient to support a finding of the three critical elements necessary for the existence of a partnership.  These facts, considered together, amply support the districts court's conclusion that T.R. and Morris were partners, and the district court did nor err in so holding.

## III.

---

[3]Apparently, at some point T.R. opened a money market account under the name Tarnavsky Ranch, which carried the same tax identification number as the Tarnavsky Brothers account.

Morris and Edward also argue that even if a partnership exists, the district court's equitable accounting is erroneous because it did not adequately take into account the fact that Morris's time and labor contributions to the partnership greatly exceeded T.R.'s. This argument is without merit.

Unless the partners agree otherwise, a partner is not entitled to compensation for acting in the partnership business. See First National Bank of Belfield v. Candee, 488 N.W.2d 391, 397 (N.D. 1992); N.D. Cent. Code § 45-16-01(8) (Supp. 1997). Ordinarily, in the absence of an agreement, a partner's right to participate in the partnership profits is not based on the extent of his services to the partnership. See Degen v. Brooks, 43 N.W.2d 755, 763 (N.D. 1950). However, "[i]f one partner refuses without good cause to perform the services to which he has agreed, the other will usually be given an allowance therefor, or a deduction will be made from the share of the partner who did not perform his agreed service." Id. (quotation omitted); see Olivier v. Uleberg, 23 N.W.2d 39, 43 (N.D. 1946).

In awarding T.R. $220,000 of the approximate $1,100,000 in partnership assets, the district court took account of the fact that T.R.'s contributions to the partnership were significantly less that Morris's, especially after T.R.'s wife became seriously ill in 1988 and T.R. abandoned his bookkeeping duties. In determining this division, the trial court considered "all the facts and circumstances and recogni[zed] the twenty three years of full time labor by Morris as opposed to the part time efforts of T.R." We conclude the district court did not err in its equitable distribution of the partnership assets.

**IV.**

Morris and Edward argue that T.R.'s claim for his share of the partnership assets, filed in July of 1995, was barred by North Dakota's six-year statute of limitations on contract or other obligations claims. See N.D. Cent. Code § 28-01-16(1) (1991). At the time in question, North Dakota law defined dissolution as "the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on . . . of the business. See N.D. Cent. Code § 45-09-01 (1993) (repealed 1997). Further, a partnership could be dissolved by the express will of any partner if no definite term was specified. See N.D. Cent. Code § 45-09-03(1)(b) (1993) (repealed 1997).

Morris and Edward assert that dissolution occurred in 1988, when T.R. abandoned his bookkeeping duties. They argue that any right T.R. had to his partnership interest accrued at that time, and therefore the end of 1994 was the latest time T.R. could bring this action. We reject this argument.

Although T.R. abandoned his bookkeeping responsibilities in 1988, and admittedly spent little time on the ranch after that year, this does not automatically dissolve the partnership. Rather, when a partner does not perform a task that he has agreed to perform on behalf of the partnership, the usual remedy, as was done here, is to adjust downward that partner's account for the value of the lost services. See Degen, 43 N.W.2d at 763; Olivier, 23 N.W.2d at 43-44.

-10-

After 1988, when Morris obtained the partnership records and became responsible for filing the tax returns, T.R. and Morris continued to file partnership returns attributing fifty percent of the profits to each of them.  Neither party expressed a desire to dissolve the partnership until Morris did so on March 12, 1992.  T.R.'s claim was filed within six years of March 12, 1992, and thus was not barred by the statute of limitations.

## V.

Morris and Edward also argue that an award of prejudgment interest was not appropriate.  We reject this argument.

In a diversity case, the award of prejudgment interest is governed by state law. See Koch Hydrocarbon Co. v. MDU Resources Group, Inc., 988 F.2d 1529, 1547 (8th Cir. 1993).  After Morris sent T.R. the Notice of Dissolution, Morris and Edward continued the farming business.  Before the partnership accounts were settled, Morris and Edward took distributions from Morris and T.R.'s joint partnership account.  Meanwhile, T.R. was not paid his share of partnership contributions and accumulated profits to which he was entitled.  The trial court did not err in awarding prejudgment interest at the rate of 6% per annum.  See N.D. Cent. Code §§ 47-14-05 (Supp. 1997); 32-03-05 (1996).

## VI.

For the foregoing reasons, we affirm the district court's judgment.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.