2005 ND 10

**Michael ZIEGLER and Jack Kitsch, Plaintiffs and Appellants**

**v.**

**Steve DAHL, David Tronson, and James Legacie, Defendants and Appellees.**

No. 20040146.

Supreme Court of North Dakota.

Jan. 19, 2005.

Rehearing Denied Feb. 16, 2005.

Douglas L. Broden (argued), Broden Law Office, and Douglas A. Goulding (appeared), Devils Lake, ND, for plaintiffs and appellants.

Nicholas B. Hall, Hodny Currie Lawyers, Grafton, ND, for defendants and appellees.

SANDSTROM, Justice.

[¶ 1] Michael Ziegler and Jack Kitsch appeal a summary judgment dismissing their claim that they were in a partnership with Steve Dahl, David Tronson, and James Legacie and are entitled to an accounting upon the winding up of the partnership. We affirm the district court's summary judgment.

I

[¶ 2] Dahl, along with Tronson and Legacie, began marketing an ice fishing guide service on Devils Lake after the 1996–1997 ice fishing season. In the spring of 1997, Dahl conceived the name "Perch Patrol" for the guide service when he was asked by the local chamber of commerce to guide a camera crew from Midwest Outdoors Television. Dahl testified in his affidavit that each member of Perch Patrol agreed to be an independent contractor, each responsible for obtaining his own license and equipment. Dahl claimed they retained their own fees, but equally shared clients and marketing expenses.

[¶ 3] Dahl asked Ziegler and Kitsch to help Perch Patrol guide ice fishermen on Devils Lake for the last part of the 1998–1999 ice fishing season. Ziegler testified in his affidavit that he considered Kitsch and himself employees of Perch Patrol for the remaining portion of the 1998–1999 season. They were paid for drilling holes in the ice, setting up shelters, and ensuring that the ice fishing clients were properly equipped. Neither Ziegler nor Kitsch had any client contact during that year.

[¶ 4] Dahl presented Ziegler and Kitsch with a document titled "Perch Patrol Expansion" in the spring of 1999. The document contained sections called "Employee Proposal" and "Partnership Proposal." Under the "Employee Proposal," Ziegler and Kitsch would receive 50 percent of the number of clients over six per day, and Dahl, Tronson, and Legacie would provide all of the fishing equipment. Under the "Partnership Proposal," Ziegler and Kitsch would "be their own separate entity under the Perch Patrol" and both parties would be "responsible for providing their own gear including fish houses, heaters, vexilars, augers, chairs, bait lunches, ect [sic]." The partnership proposal also provided that both "parties shall share equally in both the costs and the efforts in these endeavors." The parties did not adopt either proposal.

[¶ 5] The parties later agreed, but never reduced their agreement to writing, that Dahl, Tronson, and Legacie had the right to guide and receive fees from the first six clients, Ziegler and Kitsch had the next four, and Dahl, Tronson, and Legacie had clients 11, 12, 15, 16, 19, and 20. The agreement was later changed to split the fees received from each client after the first ten, and they agreed to divide equally among the five members the tips received by the guides.

[¶ 6] In November 1999, Dahl registered the trade name Perch Patrol with the North Dakota Secretary of State. On November 20, 1999, Ziegler and Kitsch each wrote a check payable to Dahl in the amount of $813.97. Ziegler and Kitsch claim the checks were an initial capital investment in a partnership, and Dahl claims they were for future marketing expenses. Dahl stated in his affidavit that he was responsible for all administrative activities for Perch Patrol, including establishing marketing agreements and plans with resorts, promoting the venture in promotional media, booking all reservations, distributing clients to guides, handling all

funds, and planning each day's activities. All the parties attended at least some trade shows to promote the Perch Patrol guide service prior to the start of the 1999 ice fishing season.

[¶ 7] On August 8, 2000, Dahl, Tronson, and Legacie informed Ziegler and Kitsch they could no longer guide with them. Dahl, Tronson, and Legacie continue to operate under the name Perch Patrol, which has been registered to Dahl with the Secretary of State as a Limited Liability Partnership since 2002.

[¶ 8] The district court granted the motion for summary judgment dismissing Ziegler and Kitsch's claim that they were in a partnership, stating there was insufficient evidence to support a finding that a partnership was created.

[¶ 9] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 2, and N.D.C.C. §§ 27–02–04 and 28–27–01.

## II

[¶ 10] The district court ordered a summary judgment dismissing Ziegler and Kitsch's claim that they were in a partnership with Dahl, Tronson, and Legacie and are entitled to an accounting of the business assets.

[¶ 11] "Summary judgment is a procedure for promptly resolving a controversy without a trial if the evidence shows there are no genuine issues as to any material fact and any party is entitled to judgment as a matter of law." *Gratech Co., Ltd. v. Wold Engineering, P.C.,* 2003 ND 200, ¶ 8, 672 N.W.2d 672; N.D.R.Civ.P. 56(c). "Even if a factual dispute exists, summary judgment is proper if the law is such that resolution of the

factual dispute will not change the result." *Id.* (citations omitted). "A de novo standard of review is used to determine whether a district court erred in granting summary judgment." *Id.* "On appeal, we view the evidence in the light most favorable to the non-moving party." *Id.* "The existence of a partnership is a mixed question of law and fact, and the ultimate determination of whether a partnership exists is a question of law." *Tarnavsky v. Tarnavsky,* 2003 ND 110, ¶ 7, 666 N.W.2d 444.

## III

[¶ 12] A partnership is "an association of two or more persons to carry on as coowners a business for profit...." N.D.C.C. § 45–13–01(18). The formation of a partnership in North Dakota is governed by N.D.C.C. § 45–14–02, which provides:

1. Except as otherwise provided in subsection 2, the association of two or more persons to carry on as coowners a business for profit forms a partnership, whether or not the persons intend to form a partnership.

2. An association formed under a statute other than chapters 45–13 through 45–21, a predecessor statute, or a comparable statute of another jurisdiction is not a partnership under chapters 45–13 through 45–21.

3. In determining whether a partnership is formed, the following rules apply:

   a. Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not by itself establish a partnership, even if the coowners share profits made by the use of the property.

   b. The sharing of gross returns does not by itself establish a partnership, even if the persons sharing them

have a joint or common right or interest in property from which the returns are derived.

c. A person who receives a share of the profits of a business is presumed to be a partner in the business, unless the profits were received in payment:

(1) Of a debt by installments or otherwise; .

(2) For services as an independent contractor or of wages or other compensation to an employee;

(3) Of rent;

(4) Of an annuity or other retirement benefit to a beneficiary, representative, or designee of a deceased or retired partner;

(5) Of interest or other charge on a loan, even if the amount of payment varies with the profits of the business, including a direct or indirect present or future ownership of the collateral, or rights to income, proceeds, or increase in value derived from the collateral; or

(6) For the sale of the goodwill of a business or other property by installments or otherwise.

## A

[¶ 13] Ziegler argues the district court erred as a matter of law by requiring intent as an element of a partnership.

■■ [¶ 14] One of the most important tests of whether a partnership exists between two persons is the intent of the parties. 59A Am. Jur. 2d *Partnership* § 136 (2003). North Dakota adopted the Revised Uniform Partnership Act in 1995, adding the words "whether or not the persons intend to form a partnership" to the definition of a partnership. 1995 N.D. Sess. Laws. ch. 430, § 4. The drafters of the uniform law did not intend any substantive changes in the current law when they added the additional phrase to the definition of a partnership. *Uniform Partnership Act* § 202, cmt. 1 (1997); *Byker v. Mannes*, 465 Mich. 637, 641 N.W.2d 210, 214 (2002).

> The addition of the phrase, "whether or not the persons intend to form a partnership," merely codifies the universal judicial construction of UPA Section 6(1) that a partnership is created by the association of persons whose intent is to carry on as co-owners a business for profit, regardless of their subjective intention to be "partners." Indeed, they may inadvertently create a partnership despite their expressed subjective intention not to do so. The new language alerts readers to this possibility.

*Uniform Partnership Act* § 202, cmt. 1 (1997). The National Conference of Commissioners on Uniform State Laws amended the definition even though they were satisfied with the existing judicial construction of the definition of partnership. *Byker*, 641 N.W.2d at 214. "The commissioners emphasized that '[n]o substantive change in the law' was intended by the amendment." *Id.* (quoting *Uniform Partnership Act* § 202, cmt. 1 (1994)). This means the focus is not on whether individuals subjectively intended to form a partnership, but on whether the individuals intended to jointly carry on a business for profit. *Id.* at 211. In interpreting Florida's adoption of the revised uniform act, a Florida appeal court said the formation of a partnership does not require the "showing that the parties subjectively intended to create a partnership, only that they intended to do the things that constitute a partnership." *Rafael J. Roca, P.A. v. Lytal & Reiter, Clark, Roca, Fountain & Williams*, 856 So.2d 1, 4 (Fla.Dist.Ct.App. 2003).

[¶ 15] We have said participants in a business "must intend to be part of an association that includes *all* the essential elements of a partnership for that association to be a partnership." *Gangl v. Gangl*, 281 N.W.2d 574, 580 (N.D.1979); *see also Tarnavsky v. Tarnavsky*, 147 F.3d 674 (8th Cir.1998) (the actions of the parties evidence their intent to be partners). The existence of this element focuses "on the intent of the participants to be a part of a relationship which includes the other essential elements of [a] partnership." *Id.* Intent does not need to "be vocalized either in writing or orally, if it can be derived from the actions of the parties." *Id.*

[¶ 16] Ziegler and Kitsch argue, both this Court and the federal district court failed to recognize the statutory change that incorporated into the definition of a partnership the language of whether or not a party intends to be a partner. They believe the language used in both *Tarnavsky* cases oversimplifies the meaning of intent of the parties and their holdings should be rejected. They argue, even if the district court correctly analyzed the intent element, the parties' intent to form a partnership is evidenced by Dahl's written "Partnership Proposal."

[¶ 17] Their argument is misplaced. The addition of the phrase, "whether or not the persons intend to form a partnership," to North Dakota's statute does not change the elements of partnership formation. The purpose of the phrase was to clarify that a partnership could be created regardless of the parties' subjective intent, making it possible for individuals to inadvertently create a partnership despite their expressed subjective intent not to do so. We held in *Gangl* that parties must intend to be a part of a relationship that includes the other essential elements of a partnership, and to do things that further their co-ownership of a business for profit. The addition to the statutory definition did not change this requirement.

[¶ 18] Dahl stated in his affidavit that neither he nor Tronson nor Legacie considered themselves, much less Ziegler or Kitsch, partners in Perch Patrol. Dahl said that he considered Perch Patrol to be an association of independent contractors and that Ziegler and Kitsch would be their own entities. The Perch Patrol expansion document given to Ziegler and Kitsch by Dahl did use the term partnership, but this proposal was never adopted. In Ziegler's affidavit, he said the parties did not accept the terms of the document, but contends the final agreement reflected the initial proposal. The terminology that parties give to their working arrangement is not determinative, "especially where the record indicates the parties did not intend to be a part of a relationship which included the other essential elements of a partnership." *Gangl*, 281 N.W.2d at 580. There was no evidence that Dahl or Tronson or Legacie intended to engage in activities that would form a partnership with Ziegler and Kitsch.

[¶ 19] Other actions by the parties do not manifest an intent to form a relationship that constitutes a partnership. The parties did not file a partnership tax return, Dahl handled all of the administrative activities, each party provided his own equipment, and all of the major decisions were made without the input and direction of Ziegler and Kitsch. Ziegler and Kitsch argue the $813.97 checks written to Dahl were capital contributions showing their intent to buy into the partnership. Dahl, and even Ziegler in his affidavit, testified the checks were contributions toward meeting future partnership expenses. Because the parties never intended to engage in activities that would result in a partnership, the intent element is not satisfied.

## B

[¶ 20] Ziegler and Kitsch argue that the district court disregarded competent evidence when it concluded they had no right of control in the business and that the court incorrectly concluded a partner needs ultimate control in the partnership.

### 1

[¶ 21] Co-ownership is the second necessary element to prove the existence of a partnership. *Tarnavsky*, 147 F.3d at 677–78. Co-ownership includes the "sharing of profits and losses as well as the power of control in the management of the business." *Id.* Control is an indispensable component of the co-ownership analysis. *Gangl*, 281 N.W.2d at 580. If partners are co-owners of a business, they each have the power of ultimate control. *Id.* (citing *Uniform Partnership Act* § 6, cmt. 1 (1914)). An important qualification to that rule, however, is that a person does not need to control the business but only needs to have the right to exercise control in the management of the business. *Id.*

[¶ 22] Ziegler and Kitsch argue the district court incorrectly sifted through evidence and became a fact finder, and the question of control should have gone to the jury to weigh the evidence and make a finding. Kitsch said in his affidavit that he participated in and made decisions regarding where to fish and that he provided other valuable knowledge and skill to Perch Patrol. He and Ziegler also claim Dahl contacted them daily to discuss business issues regarding Perch Patrol. Dahl said in his affidavit that no vote was ever taken on any issue relating to the operation and management of Perch Patrol and that he and Tronson and Legacie operated and managed all of the business functions. Dahl, in his affidavit, and Kitsch, in his deposition, said that Dahl was responsible for all of the administrative work for Perch Patrol. Ziegler and Kitsch stated in their depositions that they did what they were directed to do by Dahl, who told them which clients to guide and which ice, media, and trade shows to attend.

[¶ 23] Ziegler and Kitsch failed to demonstrate that the discussions they had with Dahl were about the management and control of the business and that their discussions affected the activities of Perch Patrol. An example of Ziegler and Kitsch's lack of control in the management of the business was the decision by Dahl, Tronson, and Legacie to cancel the rest of the guides in early March 2000 because of warmer temperatures and thawing ice. According to Dahl's affidavit, he contacted all the clients who had booked with Perch Patrol in March and canceled their reservations. He told Ziegler it was not an easy decision but he did not want to endanger the lives of clientele for a few more days of fishing. Dahl said in his affidavit that Ziegler responded, "if Perch Patrol formed a real partnership . . . and [Kitsch] and I were treated equally as you three, none of this would be an issue." Ziegler and Kitsch also argue their absence at breakfast meetings held by Dahl, Tronson, and Legacie to discuss business during the ice fishing season indicates they exercised their right of control by not attending the meetings. Their unwillingness to attend meetings demonstrates that they had the right to control where they ate breakfast, not that they had a right to exercise control in the management of the business. Viewing the evidence in the light most favorable to Ziegler and Kitsch, we see no competent evidence to support their assertion that they had a right to exercise control and management in Perch Patrol.

### 2

[¶ 24] There must be a "community of interest in the profits of the business, and an agreement or right to share profits, and, generally, an obligation to

share losses as well." 59A Am. Jur. 2d *Partnership* § 149 (2003). The sharing of gross returns does not per se establish a partnership, because those returns could have been received in payment for "services as an independent contractor or of wages or other compensation to an employee." N.D.C.C. § 45–14–02(3)(b), (c)(2); *Tarnavsky,* 147 F.3d at 678.

[¶ 25] Under the working agreement, Dahl, Tronson, and Legacie were entitled to the first six clients and Ziegler and Kitsch were allocated the next four. Each party received the fees generated by guiding his own clients, and they did not pool or divide these fees. Ziegler and Kitsch could have gone the entire winter without receiving any client fees had there been no more than six clients per day, because each guide received money only for services he actually performed. Ziegler testified in his affidavit that Dahl periodically collected the fees generated each day and distributed the revenues after deducting shared expenses for telephone bills and office supplies, and that each person was responsible for one-fifth of these expenses. Income used to pay partnership expenses is not profit. 59A Am. Jur. 2d *Partnership* § 152 (2003) (citing *Gangl,* 281 N.W.2d 574). A profit is the amount remaining after the expenses of the partnership are paid. *Id.* After Dahl deducted expenses, the money went directly to the individuals who guided the clients and was not shared with any other member of Perch Patrol. This fee structure used by Perch Patrol correlates more closely with an independent contractor payment system than with profit sharing among partners.

### C

[¶ 26] The final element of a partnership is the necessity of a profit motive. *Tarnavsky,* 147 F.3d at 678. Dahl testified during his deposition that his intent was to make a profit guiding, and there is no dispute that Perch Patrol was operated to generate client fees.

### IV

[¶ 27] We conclude the district court did not err in ordering summary judgment, because Ziegler and Kitsch failed to show that the first two elements were present in their working agreement. Because we conclude a partnership did not exist, Ziegler and Kitsch's argument that the district court erred in not compelling Dahl to disclose Perch Patrol's client list is moot. We therefore affirm the summary judgment.

[¶ 28] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.